Lyndon K. VAUGHN, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A04–0204–CR–158.

Court of Appeals of Indiana.

Jan. 28, 2003.

Bruce E. Andis, Ann M. Sutton, Marion County Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–42–2–1.3 (Burns Code Ed. Supp.2002).

2. For his conviction of domestic battery, Vaughn was sentenced to three years incarceration for the Class D felony. Throughout

## OPINION

SULLIVAN, Judge.

Lyndon K. Vaughn appeals from his conviction for Domestic Battery.[1] He presents two issues for our review: (1) whether I.C. § 35–42–2–1.3 is unconstitutionally vague, and (2) whether the evidence was sufficient to support the conviction. We address only the first issue because it is dispositive.

We reverse.

On January 6, 2002, Vaughn went to the apartment of his former girlfriend, Stephanie Currier. While there, Vaughn, along with several other guests and Currier, drank alcohol. Vaughn left the apartment to take one of the female guests home, and upon returning, heard Currier performing oral sex on one of the other men in the bathroom. Angered by this, Vaughn confronted Currier and repeatedly hit her in the face with his fist. Currier sustained injuries to her lip and received a black eye.

Vaughn was charged with two counts arising out of his actions on January 6. Count I charged Vaughn with domestic battery as a Class A misdemeanor; however, Part II of Count I indicated that on August 22, 2001, Vaughn had been convicted of battery which was related to domestic violence, thereby making the current domestic battery charge a Class D felony. Count II charged Vaughn with battery as a Class A misdemeanor. The trial court found Vaughn guilty of both Parts I and II of Count I and further, that Count II "merged" into Count I. The court concluded that it was "required to enter a finding of not guilty" as to the charge of battery.[2] Transcript at 25.

this decision, we refer to the domestic battery conviction as convictions for both the Class A misdemeanor and the Class D felony, even though Vaughn was sentenced for only one conviction.

■ Vaughn contends that I.C. § 35–42–2–1.3(2), the portion of the statute under which he was charged and convicted, is unconstitutionally vague. Indiana Code § 35–42–2–1.3 reads:

"A person who knowingly or intentionally touches a person who:

(1) is or was a spouse of the other person;

(2) *is or was living as if a spouse of the other person;* or

(3) has a child in common with the other person;

in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor. However, the offense is a Class D felony if the person has a previous, unrelated conviction under this section (or IC 35–42–2–1(a)(2)(E) before its repeal)." (emphasis supplied).

According to Vaughn, "[t]he statute is unconstitutionally vague because it does not define what constitutes 'living as if a spouse' of another, thus, no one can know with any reasonable degree of confidence whether they are, or were in the past, living with another as a spouse in terms of the Domestic Battery Statute." Appellant's Brief at 5.

The State argues that this claim has been waived by Vaughn for failing to file a motion to dismiss prior to trial, as required by Indiana Code § 35–34–1–6 (Burns Code Ed. Repl.1998) and Indiana Code § 35–34–1–4 (Burns Code Ed. Repl.1998). For support, the State directs this court to *Wiggins v. State*, 727 N.E.2d 1 (Ind.Ct.App. 2000), *trans. denied*. In *Wiggins*, this court, in relying upon the above cited statutes, held that as a general proposition, a challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial or the claim is waived. *Id.* at 5.

The doctrine of waiver has been applied many times by both this court and our Supreme Court when an appellant challenges the constitutionality of a statute. *See, e.g., Rhinehardt v. State*, 477 N.E.2d 89 (Ind.1985), *criticized on other grounds by Stout v. State*, 528 N.E.2d 476 (Ind. 1988); *Reed v. State*, 720 N.E.2d 431 (Ind. Ct.App.1999), *trans. denied*. Nonetheless, in many of these cases, the court then determined upon the merits that the constitutional challenge must fail even though the argument was waived. *See, e.g., Rhinehardt*, 477 N.E.2d at 93; *Reed*, 720 N.E.2d at 433–34; *Vaillancourt v. State*, 695 N.E.2d 606, 610 (Ind.Ct.App.1998), *trans. denied*. Just as significantly, our Supreme Court has chosen on occasion to address the merits of the constitutional challenges to criminal statutes by acknowledging that while the argument would normally be waived, it may still be proper to address the argument.

In *Payne v. State*, 484 N.E.2d 16, 18 (Ind.1985), our Supreme Court noted that there is a statutory requirement that a defendant file a motion to dismiss prior to trial challenging a statute as unconstitutional or else the challenge is generally deemed waived. While no motion to dismiss was filed in that case, the Supreme Court addressed the merits of the challenge by stating, "Nevertheless, particularly in view of the fact that the State has not raised the waiver issue, we have decided to consider the merits of the contention in this case." *Id.* More importantly, in *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992), our Supreme Court addressed a pro se motion challenging the constitutionality of a statute even though the appellant was represented by counsel who had filed a brief, albeit without presenting the issue challenging the constitutionality of the statute. In so doing, our Supreme Court stated, "Although we do not entertain *pro*

*se* pleadings when counsel is involved in a case, the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court. We therefore examine the statute and find no merit to appellant's claim." *Id.*

We recognize that no motion to dismiss was filed in this case, and further, that the State has argued that the doctrine of waiver precludes review of this issue. However, in line with the above mentioned cases, we have chosen to address the merits of Vaughn's claim. This is so because the facts of this case reveal just how far the words "living as if a spouse" can arguably be stretched in order to convict an individual under the domestic battery statute.

■■■ When the validity of a statute is challenged, we begin with the presumption of constitutionality. *Wright v. State,* 772 N.E.2d 449, 457 (Ind.Ct.App.2002). The challenger bears the burden of rebutting this presumption and all reasonable doubts must be resolved in favor of the statute's constitutionality. *Id.* A statute is not unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *State v. Lombardo,* 738 N.E.2d 653, 656 (Ind.2000). "The statute 'need only inform the individual of the generally proscribed conduct, [and] need not list with itemized exactitude each item of conduct prohibited.'" *Id.* Vagueness challenges which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand. *Id.*

The operative facts which were used to establish that Vaughn and Currier had previously been "living as if a spouse" of the other were that they had lived togeth-

er and that they had an intimate sexual relationship.[3] To establish that Vaughn and Currier had a previous relationship, the question was asked of Currier as to whether she and Vaughn had a previous intimate relationship. To clarify what was meant by intimate relationship for Currier, the Deputy Prosecuting Attorney asked her whether she had a sexual relationship with Vaughn. To that question, Currier responded that she had a sexual relationship with Vaughn and that they had lived together.

Following the close of the State's case-in-chief, Vaughn moved for an involuntary dismissal, claiming that the State had failed to meet its burden of proof on the charges. Following the response by the Deputy Prosecuting Attorney, the trial court questioned her as to how the State had proved the domestic relationship as required by the statute. The Deputy Prosecuting Attorney directed the trial court to the evidence which established that Vaughn and Currier had previously lived together and had an intimate relationship. The trial court denied Vaughn's motion based upon that evidence. A thorough review of the transcript reveals no other evidence upon which the trial court could have relied in determining that Currier and Vaughn had "lived as if a spouse" of the other.

Applying those facts to the challenged portion of I.C. § 35–42–2–1.3, we hold that the domestic battery statute is unconstitutionally vague as applied to Vaughn. The State asserts that it is enough that two individuals had lived together and those individuals had a sexual relationship during that time. The State notes that Vaughn had cited no authority, nor was it

**3.** There is no possibility that Vaughn and Currier had a relationship which would meet one of the other remaining categories of relationships as listed in the statute. Currier testified that she and Vaughn had never been married and that they did not have any children together.

aware of any, which "requires a trial court to consider whether the parties filed joint income tax returns, whether their names appeared jointly on utility bills, whether they jointly purchased real estate, how long they have lived together, whether they jointly owned any bank accounts, and whether they jointly executed any contracts." Appellee's Brief at 6. We agree that there is no authority which has required such a showing by the State, but there can be little doubt that something more than living together and having a sexual relationship is required.[4] Otherwise, many individuals who have no intent to "live as a spouse" of another would be subject to the punishments of the domestic battery statute by virtue of the fact that they live under the same roof as a domestic partner.[5]

In passing the domestic battery statute, the General Assembly did not choose to include as a category that two people "lived or were living together and were having a sexual relationship at that time." Rather, the General Assembly chose to provide protection to a group of prospective victims who live or lived as if they were spouses of the prospective batterer. "Living as if a spouse" of another person may be based upon many things, depending upon the individual interpreting the facts. It is because different people may interpret those words so differently that the General Assembly must clarify what

categories of individuals should receive the protection of the statute and conversely what persons should be subject to punishment for violation of the statute.

It may have been that the General Assembly was attempting to protect a class of individuals who acted as if spouses by sharing their finances, introducing each other as their spouse, and even by wearing rings, but who chose to never have their relationship solemnized in a civil or religious ceremony.[6] Also, because Indiana does not recognize same gender marriages, one must wonder if the protection of the statute does not fall upon two individuals who cannot be "spouses" according to the law but wholly intend to live as spouses and hold themselves out as such to their family and friends. It is possible that the General Assembly intended to provide protection to boyfriends and girlfriends who live together, but individuals of ordinary intelligence could easily disagree on whether they were "living as if a spouse" of the other if they kept separate bedrooms and chose to refrain from sexual relations until marriage, but shared some or all of the expenses of their home and maintained joint banking accounts. There is also the question of how to apply the statute to a situation in which two individuals live in separate homes but maintain joint banking accounts and equally share the responsibilities of life. None of these scenarios are "far-fetched" and indeed, are

---

**4.** It seems highly unlikely that if one were to poll a representative cross-section of society that the majority would agree that living in the same house and having sex would constitute the equivalent of being the spouse of another. Rather, one would contemplate that a lengthy list of factors would emerge.

**5.** We are not declaring "open season" on vulnerable prospective victims of domestic batterers. Indeed, the law still provides several methods to punish those individuals who strike or abuse their boyfriend or girlfriend, such as charging the individual with battery,

Ind.Code § 35–42–2–1 (Burns Code Ed. Supp.2002), or aggravated battery, Ind.Code § 35–42–2–1.5 (Burns Code Ed. Repl.1998). In many cases, the punishment for these crimes will be equal to the punishment for domestic battery, and in some cases, more severe.

**6.** It may be noted that since January 1, 1958, Indiana has not and does not recognize common law marriage. Ind Code § 31–11–8–5 (Burns Code Ed. Repl.1997).

rather commonplace in today's society. While the General Assembly may very well have intended to provide the protections of the domestic battery statute to individuals who were involved in relationships such as these mentioned, that protection cannot be provided under the condition of "living as if a spouse" of another.[7] Regardless of one's view of whether these relationships would qualify one as "living as if a spouse" of another, there can be little dispute that only living in the same home and having a sexual relationship does not equate one to being a spouse.

In vacating the conviction for domestic battery, we do not intend to jeopardize the validity of a conviction for battery [8] which was merged into the conviction for domestic battery in order to prevent a double jeopardy violation.[9] Because we have vacated the domestic battery conviction, double jeopardy is no longer a problem, and therefore, a conviction for battery would be valid. We recognize that the trial court indicated in the sentencing statement that a finding of "not guilty" was being entered on the battery conviction. However, that choice of words was inadvertent because the trial court was clearly not acquitting Vaughn of battery, but rather, did not enter judgment on the charge of battery because the double jeopardy problem would have arisen. The trial court is not precluded from entering conviction and judgment against Vaughn on the charge of battery. *See Carter v. State*, 750 N.E.2d 778, 781 n. 9 (Ind.2001) (indicating that a conviction for a lesser offense may still be valid if a conviction for the greater offense is reversed, and further, that even if the conviction for the lesser offense had been vacated by the trial court, a challenge to the validity of the vacated verdict may not succeed); *Taflinger v. State*, 698 N.E.2d 325, 327 (Ind.Ct.App.1998) (holding that following this court's reversal of a conviction for attempted murder, the trial court could reinstate a jury verdict of guilty for neglect of a dependent child which had been dismissed by the State in order to prevent a double jeopardy violation).

The judgment is reversed. We remand to the trial court for proceedings not inconsistent with this decision.

BAILEY and MATHIAS, JJ., concur.

---

**7.** It seems that the focus of the protection of the domestic battery statute should be upon the crime of battery in a domestic setting and not upon the title or status of the criminal or victim. In this sense, it is highly possible that the statute should focus upon battery committed against a "domestic partner" as that category most likely includes a wide range of relationships which others may exclude.

**8.** Ind.Code § 35–42–2–1 (Burns Code Ed. Supp.2002).

**9.** We have found no Indiana case which addresses whether a conviction for battery and domestic battery creates a double jeopardy violation when the convictions arise out of the same incident. However, according to the long established rules of statutory construction and common law which are used to correct double jeopardy violations, the conviction on both does create a double jeopardy violation because battery consists of the very same act as an element of domestic battery. *See Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (stating that one of the five categories of statutory construction and common law established as double jeopardy is "conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished.") Reviewing the statutes, one sees that domestic battery consists of Class A misdemeanor battery (knowingly or intentionally touching another person in a rude, insolent, or angry manner with such touching resulting in bodily injury) plus the domestic relationship necessary for domestic battery.