Ronnie R. **WILLIAMS**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 34A02–0212–CR–1084.**

Court of Appeals of Indiana.

Nov. 10, 2003.

---

William C. Menges, Jr., Howard County Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Ronnie R. Williams appeals from his conviction of Domestic Battery,[1] a class

---

1. Ind.Code Ann. § 35–42–2–1.3 (West, PREMISE through 2002 1st Special Sess.). On May 7, 2003, the General Assembly amended Indiana's domestic battery statute to include a non-exhaustive list of factors courts shall review when considering whether a defendant "is or was living as a spouse" of the alleged victim. The amendment became effective July 1, 2003. Williams was convicted on October 24, 2002 and sentenced on November 26, 2002 under I.C. § 35–42–2–1.3 before the 2003 amendment. "Unless there are strong and compelling reasons, statutes will normally be given prospective application. While statutes addressing merely procedural and remedial matters may be applied retroactively, such application is not required." *Gosnell v. Ind. Soft Water Serv., Inc.*, 503 N.E.2d 879, 880 (Ind.1987). As Williams was convicted before the amendment of § 35–42–2–1.3, the

A misdemeanor. The sole issue on appeal is, did sufficient evidence support his conviction?

We affirm.

The facts favorable to the conviction demonstrate that on March 6, 2002, Heath Evans, a Kokomo Police Officer, was dispatched to the residence of Susan Kenner. When Evans arrived and Kenner admitted him into the home, Evans witnessed the house in a state of disarray—furniture overturned, objects strewn about the bedroom and living room, broken glass on the floor, and a broken-glass window on the back door. Heath noted that Kenner was crying and shaking and that she had cuts on her hand. Kenner informed Evans that she and Williams, her live-in boyfriend, were arguing about Kenner's belief that Williams was romantically involved with another woman when Williams became angry and caused the damage in the home. Kenner also told Evans that during the argument Williams began hitting her on the head and body and threw her against the back door, which caused her hand to go through the glass window and to sustain the cuts Evans observed. Kenner then completed and signed a Domestic Battery Affidavit, and Evans left the residence to locate Williams.

Williams was subsequently charged with domestic battery and convicted after a bench trial. In this direct appeal, Williams contends that the evidence was insufficient to support his conviction. Specifically, Williams contends: (1) that the State did not prove that Williams was living with Kenner as if he were her spouse; and (2) the State did not prove that Williams touched Kenner in a rude, insolent, or angry manner, causing injury to her.

When considering a challenge to the sufficiency of the evidence, we apply a well-settled standard of review. We neither weigh evidence nor assess matters of witness credibility. *Davis v. State*, 743 N.E.2d 751 (Ind.2001). Instead, we confine our review to the evidence and reasonable inferences supporting the conviction. Upon reviewing that evidence and the supporting reasonable inferences, we determine whether there was substantial evidence of probative value to support the judgment. *Id.* We will affirm if a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

The record reveals that Kenner and Williams were cohabiting and had an ongoing romantic relationship at the time of the incident. It was therefore reasonable for the trier of fact to infer that they lived together as if they were spouses. Further, Kenner informed Evans that she and Williams had argued about Williams's possible romantic relationship with another woman, which escalated to Williams hitting Kenner in the head and body and throwing her against the back door causing her to sustain injuries. Kenner also completed and signed a Domestic Battery Affidavit the evening of the incident. The evidence is such that a reasonable trier of fact could have found Williams guilty of domestic battery beyond a reasonable doubt.

In affirming the decision of the trial court, we are mindful of the recent ruling of another panel of this court in *Vaughn v. State*, 782 N.E.2d 417 (Ind.Ct. App.2003), *trans. denied.* In that case, Vaughn hit his former girlfriend, with whom he was no longer living, repeatedly in the face causing injury. Vaughn was charged and convicted under the domestic battery statute. *Id.* The sole issue ad-

amendment does not affect our analysis of the instant case.

dressed on appeal was whether I.C. § 35–42–2–1.3 was unconstitutionally vague as applied to Vaughn. The *Vaughn* court found the statute unconstitutional as applied and reversed the conviction. We believe the facts of *Vaughn* are clearly distinguishable from the present case, but to the extent *Vaughn* holds that the two factors demonstrated by the State, i.e., cohabiting and a sexual relationship, may never satisfy the requirements of I.C. § 35–42–2–1.3, we respectfully disagree.[2]

The General Assembly enacted Indiana's Domestic Battery statute, I.C. § 35–42–2–1.3, in 2000:

▮▮▮ Sec. 1.3. (a) A person who knowingly or intentionally touches a person who:

(1) is or was a spouse of the other person;

(2) is or was living as if a spouse of the other person; or

(3) has a child in common with the other person;

in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor. However, the offense is a Class D felony if the person has a previous, unrelated conviction under this section (or IC 35–42–2–1(a)(2)(E) before its repeal).[3]

We note here that no Indiana court has addressed the general purpose behind the domestic battery statute. A statute's "interpretation is controlled by the express language of the statute and the rules of statutory construction." *State v. Evans*, 790 N.E.2d 558, 560–61 (Ind.Ct.App.2003) (citing *Chavis v. Patton*, 683 N.E.2d 253, 257 (Ind.Ct.App.1997)), *trans. pending.* "The intent of the legislature as gleaned from the whole prevails over the strict or

---

**2.** We also acknowledge *Davis v. State*, 796 N.E.2d 798 (Ind.Ct.App.2003), a recent decision of this court that addresses the domestic battery statute in relation to *Vaughn*. In dicta, *Davis* distinguishes itself from *Vaughn* by noting that the evidence presented regarding the defendant and victim in *Davis* demonstrated that they had been living together for six to eight months at the time of the incident, had a mutual agreement that a relationship existed, and that the defendant had taken care of the victim's children. *Id.* Similar to *Davis*, we believe that "under the circumstances in this case, the 'living as if a spouse of the other person' provision within the domestic battery statute was susceptible of meaning so as to place [Williams] on notice that his conduct violated the domestic battery statute." *Id.* at 804.

**3.** As an apparent response to *Vaughn,* in 2003 the legislature amended I.C. § 35–42–2–1.3 to include factors to be reviewed when determining if a person is or was living "as if a spouse":

Sec. 1.3. (a) A person who knowingly or intentionally touches an individual who:

(1) is or was a spouse of the other person;
(2) is or was living as if a spouse of the other person as provided in subsection (b); or
(3) has a child in common with the other person;
in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor. However, the offense is a Class D felony if the person has a previous, unrelated conviction under this section (or IC 35–42–2–1(a)(2)(E) before its repeal).
(b) In considering whether a person is or was living as a spouse of another individual in subsection (a)(2), the court shall review the following:
(1) the duration of the relationship;
(2) the frequency of the contact;
(3) the financial interdependence;
(4) whether the two (2) individuals are raising children together;
(5) whether the two (2) individuals have engaged in tasks directed towards a common household; and
(6) other factors the court considers relevant.

literal meaning of any word or phrase used within the statute." *Id.*

In enacting a separate battery statute particular to domestic battery, the legislature clearly intended to create an additional disincentive for battery in a domestic setting.[4] To achieve this result, the domestic battery statute created a harsher penalty scheme than the general battery statute. Specifically, a battery under I.C. § 34–42–2–1 is a class B misdemeanor, which may become a class A misdemeanor or a Class D felony if the victim falls within one of the enumerated categories of victims, e.g., law enforcement officers in the line of duty. In contrast, under the domestic battery statute, a first offense is a class A misdemeanor and a subsequent offense is a class D felony. I.C. § 34–42–2–1.3(a).

This potential for greater punishment recognizes the legislature's particular concern with the impact and costs of domestic battery as opposed to battery in general. Common sense and practical experience inform us of the heightened passions that accompany intimate romantic relationships, whether physical or emotional, and the additional danger presented when a potential batterer and a victim live under the same roof. *Vaughn* presented a situation in which it was questionable whether the couple at issue fell within the scope of the domestic battery statute. The instant case, however, is precisely the situation envisioned by the domestic battery statute. The State presented evidence to show that Williams and Kenner were involved in an ongoing romantic relationship and were cohabiting. Additionally, at no time during Williams's trial was there any question raised regarding whether the battery oc-

curred in a domestic setting, as contemplated by the statute. Clearly, it did.

Moreover, while the legislature apparently accepted the *Vaughn* court's invitation to clarify the meaning of "as if a spouse" through the 2003 amendment of the statute, we do not believe the legislature intended these factors to serve as a litmus test nor do we believe that the list of factors need even be consulted if the character of the relationship is clearly "domestic." We find support for this position in that I.C. § 35–42–2–1.3(b)(6) allows consideration of "other factors the court considers relevant." This broad catchall recognizes that strict reliance on any list of factors could exclude a couple living in a spouse-like relationship who may not satisfy the common factors indicative of marriage listed in I.C. § 35–42–2–1.3(b), e.g., a couple who chooses to maintain separate finances, a commuter couple who see one another once a month, etc. Further, when the character of the relationship clearly warrants application of the domestic battery statute, i.e., the couple is cohabiting and engaged in an ongoing romantic relationship, a court would not need to undertake further analysis. In marginal cases, such as *Vaughn*, where the character of the relationship is uncertain, the factors should be applied, but, on the facts of this case, we need not ask the State to prove more than it has.

Within thirty minutes of arriving at Williams and Kenner's shared residence, Officer Evans assessed the situation as a potential domestic abuse situation. To that end, after interviewing Kenner, he had her complete and sign a Domestic Battery Affidavit that stated Williams had become physically abusive towards her during an argument. Further, Williams

---

4. The Merriam Webster Dictionary defines domestic as "of or relating to the household or the family." *Merriam–Webster Dictionary* (11th ed.2003), *available at http://www.m-w.com* (last visited August 25, 2003).

and Kenner cohabited and shared an ongoing romantic relationship at the time of the battery. The State sufficiently proved that the character of their relationship clearly implicated the harm the domestic battery statute sought to prevent. The evidence was sufficient to prove that Williams was guilty of domestic battery beyond a reasonable doubt.

Judgment affirmed.

RILEY, J., concur.

SULLIVAN, J., dissenting with separate opinion.

SULLIVAN, Judge, dissenting.

The recent decision by this court in *Davis v. State*, 796 N.E.2d 798 (Ind.Ct. App.2003) demonstrates the factual distinction between a person "living as if a spouse" and a mere romantic/cohabitation relationship. In that decision, the lead opinion by Judge Darden focused upon the new statutory factors set forth in I.C. § 35–42–2–1.3. Both Judge Baker and I wrote separate concurrences reflecting our respective but opposing views concerning the analysis made by a unanimous but different panel of this court in *Vaughn v. State*, 782 N.E.2d 417 (Ind.Ct.App.2003).

It appears that Judge Friedlander, as per his opinion in the case now before us, and Judge Riley are more in tune with Judge Baker's view that *Vaughn* was wrongly decided. In doing so, Judge Friedlander's opinion categorizes the distinction drawn in *Davis*, between its facts and the facts in *Vaughn*, as dictum. I respectfully submit that the distinction drawn is not dictum. It is the very basis of the holding.

*Davis* requires far more than a mere "ongoing romantic relationship" and living together. Taking the majority opinion in the case before us at face value, it says that the purpose of the General Assembly in enacting the Domestic Battery Statute was to punish "battery in a domestic setting" more severely than the punishment for battery under I.C. § 35–42–2–1. Op. at 461. Again, a "domestic setting" in and of itself does not trigger application of the Domestic Battery provision. If it were otherwise, we would ignore the clear and unmistakable requirement that the batterer is "living as if a spouse" of the victim. See I.C. § 35–42–2–1.3. If it were otherwise, two gentlemen sharing living accommodations, driven by a debate whether the Cubs will ever again play in a World Series, and who engage in a physical altercation causing bruises would be guilty of Domestic Battery. So too even two siblings living with their parents might be considered in the majority's "domestic setting" contrary to the intent of the General Assembly.

Furthermore, the majority opinion relegates the new amendatory legislation to the scrap-heap of statutory construction. It seems clear that the enumerated factors in the present statute were intended to guide the court in making a determination whether or not a couple were "living as if a spouse." It would seem probable that the statutory amendment was a response to the decision in *Vaughn, supra*. *See Jones v. State*, 457 N.E.2d 231 (Ind.Ct.App.1983). It seems clear that the addition of the amendatory language was intended not to change the law but rather to clarify the statute in order to cure the constitutional infirmity discerned in *Vaughn*. *See Med. Disposal Servs Inc. v. Ind. Dep't of Envtl. Mgmt.*, 669 N.E.2d 1054 (Ind.Ct.App. 1996); *Nat'l Salvage & Serv. Corp. v. Comm'r of Ind. Dep't of Envtl. Mgmt.*, 571 N.E.2d 548 (Ind.Ct.App.1991); *Bailey v. Menzie*, 505 N.E.2d 126 (Ind.Ct.App.1987); *Jones v. State, supra*. That being said, a "domestic setting" or a mere romantic re-

lationship, even with cohabitation, is not determinative.

For the reasons set forth, I am led to conclude that the facts before us are akin to the facts of *Vaughn.* Accordingly, I would follow the holding in *Vaughn,* and, not inconsistent with *Davis v. State,* would reverse the judgment of conviction in this case.