**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PETER D. TODD**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARCUS L. WILSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1212-CR-557 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1109-FC-55

**August 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Marcus L. Wilson was convicted of class C felony Criminal Confinement,[1] class D felony Strangulation,[2] class D felony Domestic Battery,[3] and class A misdemeanor Interference with Reporting a Crime,[4] and he was adjudicated a habitual offender.[5] Wilson appeals and argues that the State presented insufficient evidence to support his domestic battery conviction.

We affirm.

On September 14, 2011, Jessica Hill received a telephone call from the mother of Wilson's child. At that time, Wilson and Hill had been in a relationship for three years and were engaged to be married. The caller informed Hill that she had been in a sexual relationship with Wilson during Wilson and Hill's relationship. Hill became upset and confronted Wilson about the affair over the phone. Wilson told Hill to come over to his mother's house, and she did so.

When Hill arrived at the house, Wilson got into her car. He denied the affair, and the couple began to argue. Wilson grabbed the stereo out of the car and threw it. Hill then got out of the car and removed Wilson's belongings from the trunk of her car. Hill then got back into the car, and Wilson snatched the keys. When Hill attempted to call the police, he grabbed her cell phone as well. Wilson then grabbed Hill by the hair and dragged her into the house. Once inside the house, Wilson shoved Hill against the stove. Hill attempted to

---

[1] Ind. Code Ann. § 35-42-3-3 (West, Westlaw current with all 2013 legislation).
[2] I.C. § 35-42-2-6 (West, Westlaw current with all 2013 legislation).
[3] I.C. § 35-42-2-1.3 (West, Westlaw current with all 2013 legislation).
[4] Ind. Code Ann. § 35-45-2-5 (West, Westlaw current with all 2013 legislation).
[5] Ind. Code Ann. § 35-50-2-8 (West, Westlaw current with all 2013 legislation).

escape, but Wilson said "til death do us part" and told her she was not going anywhere. *Transcript* at 397. Wilson then pushed Hill to the ground and choked her until she began to feel light-headed. He then released Hill's neck and she ran out the back door. She then drove to her grandfather's house and called 911.

Corporal Jason Reed of the Elkhart Police Department responded to the 911 dispatch. When Corporal Reed spoke to Wilson, he admitted that an argument had taken place, but denied that it had become physical. Wilson also told Corporal Reed that he and Hill had been dating for approximately a year and a half and that the couple lived together and shared water and electric bills.

As a result of these events, the State charged Wilson with class C felony criminal confinement, class D felony strangulation, class A misdemeanor domestic battery, and class A misdemeanor interfering with reporting a crime. For the purpose of elevating the domestic battery charge to a class D felony, the State alleged on a separate charging information that Wilson had a previous domestic battery conviction. Finally, the State filed a habitual offender allegation. A bifurcated jury trial commenced on November 27, 2012, and Wilson was found guilty of all four charges. Wilson then pleaded guilty to the enhancement of the domestic battery conviction and admitted the habitual offender allegation. Wilson now appeals.

Wilson contends that the State presented insufficient evidence to support his domestic battery conviction. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d

601 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008).

It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been made. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. *Thompson v. State*, 804 N.E.2d 1146.

To convict Wilson of class D felony domestic battery as charged, the State was required to prove that (1) Hill "is or was living as if [Wilson's] spouse"; (2) Wilson touched Hill in a rude, insolent, or angry manner, (3) resulting in bodily injury to Hill, and (4) that Wilson had a previous domestic battery conviction. *See* I.C. § 35-42-2-1.3. Wilson disputes only the first element; that is, he claims that the State presented insufficient evidence to establish that Hill is or was living as if Wilson's spouse.

The domestic battery statute provides as follows:

In considering whether a person is or was living as a spouse of another individual for purposes of subsection (a)(2), the court shall review:

(1) the duration of the relationship;
(2) the frequency of contact;
(3) the financial interdependence;
(4) whether the two (2) individuals are raising children together;
(5) whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
(6) other factors the court considers relevant.

I.C. § 35-42-2-1.3(c). While the statutory factors provide a useful framework, this court has held that "[t]he legislature did not intend for these factors to serve as a litmus test[.]" *Croy v. State*, 953 N.E.2d 660, 663 (Ind. Ct. App. 2011). Indeed, where the relationship is clearly domestic in character, the list need not be consulted. *Croy v. State*, 953 N.E.2d 660 (citing *Williams v. State*, 798 N.E.2d 457 (Ind. Ct. App. 2003)).

Wilson told Corporal Reed that he and Hill lived together and shared water and electric bills. Hill testified that she and Wilson had lived together off and on throughout the course of their three-year relationship, that they saw each other every day, and that they were engaged to be married and had purchased rings. Moreover, Wilson became violent after he and Hill argued about Wilson's possible sexual relationship with another woman. Additionally, Hill had all of Wilson's belongings in her possession, in the trunk of her car. Hill testified that Wilson kept his belongings in the trunk of her car because "we didn't know whether he was going to stay or not from day to day." *Transcript* at 412. It is reasonable to infer from this testimony that Wilson stayed with Hill quite often. These facts are more than sufficient to give rise to a reasonable inference that Hill was living as if Wilson's spouse for the purposes of the domestic battery statute.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.