

FILED

Oct 02 2013, 5:43 am

CLERK

of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| SHAYLA BOWLING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1212-CR-553 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITLEY SUPERIOR COURT
The Honorable Douglas M. Fahl, Judge
Cause No. 92D01-1205-FD-284

**October 2, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Shayla Bowling appeals her conviction for Domestic Battery,[1] as a class D felony. She presents the following restated issue for review: As a matter of law, can a defendant married to one person be convicted of domestic battery of another person under the "is or was living as if a spouse" provision of the domestic battery statute?

We affirm.

Despite being married to another man with whom she shared a child, Bowling had been involved in a romantic relationship with C.C. for two years prior to her arrest on the instant charges. Bowling and C.C. had lived together off and on, once for as long as four to five months. Their relationship was fraught with violence, and Bowling had a no contact order issued against her and in favor of C.C. in Vigo County on July 29, 2011.[2] Further, Bowling pleaded guilty in November 2011 in Whitley County to the domestic battery of C.C., as well as invasion of privacy.

On May 5, 2012, as the result of a traffic stop in Greene County, Bowling and C.C. were found together in violation of the active protective order out of Vigo County.[3] Despite being warned of the protective order, Bowling was once again found with C.C. on May 12, 2012, this time in Whitley County. According to C.C., for a day or two, the couple had been living in a barn that he had made into a makeshift home on property owned by his parents. They had plans to finish the barn and continue living in it together.

---

[1] Ind. Code Ann. § 35-42-2-1.3 (West, Westlaw current with all 2013 legislation).
[2] This was not the first protective order involving this couple. In fact, the Vigo County order was issued while charges of invasion of privacy were pending for violation of a separate protective order issued against Bowling and in favor of C.C.
[3] Charges were filed on May 7 for invasion of privacy but later dismissed.

In the early morning hours of May 12, 2012, a neighbor called police after hearing an ongoing fight in the barn that she feared might result in homicide. Police arrived to find that the altercation involved Bowling and C.C. and that C.C. had visible injuries, including scratches, a bite mark, and a bloody nose. Bowling and C.C. were both arrested.

On May 14, 2012, the State charged Bowling with class A misdemeanor domestic battery and class A misdemeanor invasion of privacy. The State sought elevation of each count to a class D felony based upon a prior unrelated conviction for the same crime. The State also filed an allegation that Bowling was a habitual offender. At the jury trial on December 19, 2012, the jury found Bowling guilty of both class A misdemeanors. Thereafter, Bowling admitted to prior convictions resulting in an elevation of each offense to a class D felony. She also admitted being a habitual offender. The trial court subsequently sentenced Bowling to three years in prison for domestic battery, enhanced by three years for being a habitual offender. The court also sentenced her to a concurrent term of three years for invasion of privacy. Bowling now appeals challenging only her conviction for domestic battery.

On appeal, Bowling does not directly challenge the sufficiency of the evidence supporting her conviction. Rather, she contends that we should hold as a matter of law for purposes of the domestic battery statute that a married individual cannot be "living as if a spouse" with a third party and, therefore, cannot be convicted of domestic battery of the third party. Accordingly, she presents a question of statutory interpretation (i.e., a question of law) which we review de novo. *See Nicoson v. State*, 938 N.E.2d 660 (Ind. 2010).

The primary purpose of statutory interpretation is to ascertain and give effect to the legislature's intent, and the statute itself is the best evidence of this intent. *Id.* We presume that the legislature intended for the statutory language to be applied in a logical manner in harmony with the statute's underlying policy and goals. *Id.*

Indiana's domestic battery statute provides in relevant part:

(a) A person who knowingly or intentionally touches an individual who:

> (1) is or was a spouse of the other person;
> (2) is or was living as if a spouse of the other person as provided in subsection (c); or
> (3) has a child in common with the other person;

in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

I.C. § 35-42-2-1.3. In enacting the domestic battery statute, which has a harsher penalty scheme than the general battery statute, "the legislature clearly intended to create an additional disincentive for battery in a domestic setting." *Williams v. State*, 798 N.E.2d 457, 461 (Ind. Ct. App. 2003).

This potential for greater punishment recognizes the legislature's particular concern with the impact and costs of domestic battery as opposed to battery in general. Common sense and practical experience inform us of the heightened passions that accompany intimate romantic relationships, whether physical or emotional, and the additional danger presented when a potential batterer and a victim live under the same roof.

*Id.* We have held that the domestic battery statute envisions a situation, among others, where individuals are (or were) involved in an ongoing relationship and cohabiting.[4] *Williams v.*

---

[4] I.C. § 35-42-2-1.3(c) sets forth factors to consider in determining whether a person is or was living as a spouse of another for purposes of subsection (a)(2):

4

*State*, 798 N.E.2d 457.

As set forth above, Bowling claims that as a matter of law she could not be living as if a spouse with C.C., within the meaning of the domestic battery statute, when she was married to another man. Initially, Bowling observes that she could not be legally married to both men without committing bigamy. She then asserts that "to permit the Domestic Battery statute to include sexual partners or extramarital affair participants would arguably, broaden the scope of the Domestic Battery statute". *Appellant's Brief* at 8. We are unpersuaded by Bowling's slender analysis.

Anti-bigamy laws have no relevance to the issue at hand. Further, even a cursory review of I.C. § 35-42-2-1.3(a) reveals that an individual may be subject to domestic battery charges against more than one individual at any given time. For example, an individual might have a child in common with person A (subsection (a)(3)), be a former spouse of person B (subsection (a)(1)), and be living as if a spouse with person C (subsection (a)(3)). Battering any one of these people would subject the individual to a charge of domestic battery.

Moreover, allowing the domestic battery statute to apply to extramarital relationships does not broaden the intended scope of the statue, as long as this relationship falls within the

---

(1) the duration of the relationship;
(2) the frequency of contact;
(3) the financial interdependence;
(4) whether the two (2) individuals are raising children together;
(5) whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
(6) other factors the court considers relevant.

*Id*. We have explained, however, that these factors are not intended as a litmus test and do not need to be consulted "if the character of the relationship is clearly 'domestic.'" *Williams v. State*, 798 N.E.2d at 461.

is-or-was-living-as-if-a-spouse requirement of subsection (a)(2) (or if the defendant has a child with her extramarital partner). In other words, the fact that the defendant is legally married does not shield the defendant from the domestic battery statute if he or she batters another person with whom he or she has shared a domestic relationship. The focus must be on the defendant's past or present relationship with the victim and whether said relationship was domestic as defined by the statute. Contrary to Bowling's suggestion, the nature of this relationship is not defined as a matter of law by the defendant's relationship with another individual.

Having determined that Bowling's purely legal argument fails, we observe that the jury in the instant case determined that she is or was living as if a spouse of C.C.[5] We do not undertake to review this factual finding, as Bowling has not challenged the sufficiency of the evidence. Accordingly, her conviction stands.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.

---

[5] We note that Bowling pleaded guilty in November 2011 to the domestic battery of C.C., admitting at the time that she was living with C.C. as if a spouse.