## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Ana M. Quirk
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.B.S., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 22, 2015 <br><br> Court of Appeals Case No. 18A05-1505-CR-448 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Thomas A. Cannon, Jr., Judge <br><br> Trial Court Cause No. 18C05-1406-FD-57 |

**Bradford, Judge.**

## Case Summary

[1]     On the evening of March 30, 2014, Appellant-Defendant J.B.S. argued with his then-girlfriend, A.B.  At the time of this argument, A.B. resided with J.B.S. in his apartment.  The argument became physical, with J.B.S. choking A.B. until she lost consciousness.  J.B.S. was subsequently convicted of Class A misdemeanor domestic battery in violation of Indiana Code section 35-42-2-1.3.

[2]     On appeal, J.B.S. challenges the constitutionality of Indiana Code section 35-42-2-1.3, as it was applied to him.  Alternatively, J.B.S. argues that the evidence is insufficient to sustain his conviction.  Concluding that J.B.S. has failed to prove that Indiana Code section 35-42-2-1.3 was unconstitutional as applied to J.B.S. and that the evidence is sufficient to sustain J.B.S.'s conviction, we affirm.

## Facts and Procedural History

[3]     In 2013, J.B.S. and A.B. were both graduate students at Ball State University.  While enrolled at Ball State, both J.B.S. and A.B. resided in Muncie.  After being introduced by a mutual friend, J.B.S. and A.B. entered into a "boyfriend and girlfriend" relationship in July of 2013.  Tr. p. 288.  A.B. described this relationship as a monogamous, intimate relationship.  This relationship continued while A.B. completed an internship in Fishers during the months of August, September, and October.  After completing her internship, A.B. returned to Muncie in the beginning of November.

[4] Upon returning to Muncie, A.B. began residing with J.B.S. in his apartment. A.B. moved all of the belongings which she needed to live into J.B.S.'s apartment. While residing in the apartment with J.B.S., A.B. helped with domestic functions such as cooking and cleaning. A.B. and J.B.S. shared the same bed and engaged in sexual relations. A.B. also completed a change of address and listed J.B.S.'s address as the address on her driver's license.

[5] A.B. continued to reside with J.B.S. in his apartment until she temporarily relocated to Houston for an internship in January of 2014. J.B.S. and A.B. planned to again cohabitate after A.B. returned from her internship in Houston.

[6] A.B. and J.B.S. began to encounter problems with their relationship while A.B. was temporarily in Houston. A.B. attributed these problems, at least in part, to the distance between them. In March of 2014, J.B.S. flew to Houston to help A.B. drive back to Muncie. Once in Houston, J.B.S. and A.B. began to argue and at one point "broke[] up." Tr. p. 294. They then drove back to Muncie together.

[7] Once back in Muncie, A.B. and J.B.S. continued to argue. As a result of the continuing argument, A.B. decided to move out of J.B.S.'s apartment. However, before she did so, during the evening hours of March 30, 2014, J.B.S. became physical with A.B.

[8] J.B.S., who outweighed A.B. by approximately fifty to sixty pounds, grabbed A.B., read a text on A.B.'s cellular phone from A.B.'s mother, and "threw [A.B.] down onto the bed." Tr. pp. 314-15. J.B.S. told A.B. "if you want to

fight, we'll fight." Tr. p. 315. J.B.S. then straddled A.B., who began trying to get away from J.B.S.. J.B.S. placed his hands around A.B.'s neck. A.B. placed her hands on J.B.S.'s wrists and, in an attempt to get him to stop, "squeeze[ed] his arms, sticking [her] nails into him." Tr. p. 317. A.B. was unable to free herself from J.B.S..

[9]     During their struggle, A.B. pleaded with J.B.S. to stop, telling him that he was hurting her. A.B. became scared after J.B.S. indicated that he "was going to kill" her. Tr. p. 318. J.B.S. continued choking A.B. until she lost consciousness.

[10]    After regaining consciousness, A.B. fled J.B.S.'s apartment. A.B. made her way to a nearby apartment. The resident of that apartment notified the police who came to the scene and documented A.B.'s demeanor and injuries. A.B. was subsequently transported away from the scene by police.

[11]    On June 13, 2014, Appellee-Plaintiff the State of Indiana (the "State") charged J.B.S. with Class D felony strangulation, Class A misdemeanor domestic battery, and Class D felony criminal confinement. Following a three-day jury trial, the jury found J.B.S. guilty of Class A misdemeanor domestic battery and not guilty of Class D felony strangulation and Class D felony criminal confinement. The trial court subsequently imposed a six-month suspended sentence. This appeal follows.

# Discussion and Decision

# I. Whether the Domestic Battery Statute is Unconstitutionally Vague As Applied to J.B.S.

[12] J.B.S. contends that Indiana Code section 35-42-2-1.3 is unconstitutionally vague as it applies to him because it is unclear what conduct is necessary to prove that two individuals were "living as if a spouse of the other person." J.B.S.'s entire contention in this regard is supported by the prior decision of this court in *Vaughn v. State*, 782 N.E.2d 417 (Ind. Ct. App. 2003). J.B.S.'s reliance on *Vaughn*, however, is unavailing, because the Vaughn decision is no longer good law as it has been superseded by statute. *See generally, Williams v. State*, 798 N.E.2d 457, 460 n.3 (Ind. Ct. App. 2003) (noting that in an apparent response to *Vaughn*, in 2003, the legislature amended Indiana Code section 35-42-2-1.3 to include factors to be reviewed when determining if a person is or was living "as if a spouse" of another). J.B.S. makes no claim that the statute, as amended, is unconstitutionally vague. J.B.S.'s challenge in this regard therefore fails.

# II. Whether the Evidence is Sufficient to Sustain J.B.S.'s Conviction for Class A Misdemeanor Domestic Battery

[13] J.B.S. also contends that the evidence is insufficient to sustain his conviction for Class A misdemeanor domestic battery. The Indiana Supreme Court has held that "[i]t is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). As such,

> [w]hen reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Wright v. State*, 828 N.E.2d 904, 905-06 (Ind. 2005). The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. *Rohr v. State*, 866 N.E.2d 242, 248 (Ind. 2007). "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (first set of brackets added, second set of brackets in original).

[14] It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Drane*, 867 N.E.2d at 147. "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id*. "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Further, a conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Bailey*, 979 N.E.2d at 135 (citing *Ferrell v. State*, 565 N.E.2d 1070, 1072-73 (Ind. 1991)). The jury, acting as the trier-of-fact, is "'free to believe whomever they wish.'" *Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008) (quoting *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996)).

The version of Indiana Code section 35-42-2-1.3 that was in effect on the date J.B.S. committed the underlying acts provided, in relevant part, as follows:

> (a) A person who knowingly or intentionally touches an individual who:
>
> ****
>
> (2) is or was living as if a spouse of the other person as provided in subsection (c) …
>
> in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.
>
> ****
>
> (c) In considering whether a person is or was living as a spouse of another individual for purposes of subsection (a)(2), the court shall review:
>
> (1) the duration of the relationship;
> (2) the frequency of contact;
> (3) the financial interdependence;
> (4) whether the two (2) individuals are raising children together;
> (5) whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
> (6) other factors the court considers relevant.

In challenging the sufficiency of the evidence to sustain his conviction for Class A misdemeanor domestic battery, J.B.S. claims that the State failed to prove that he was living "as if the spouse" of A.B. We have previously concluded that when reviewing the sufficiency of the evidence relating to whether a defendant was "living as if a spouse of" their victim, we focus on "the defendant's past or present relationship with the victim and whether said relationship was domestic as defined by statute." *Bowling v. State*, 995 N.E.2d

715, 719 (Ind. Ct. App. 2013). Here, the evidence supports the inference that such a relationship exists.

[17] The record reveals that J.B.S. and A.B., both students at Ball State University, had resided together in J.B.S.'s apartment for nearly three months before A.B. temporarily relocated to Houston for an internship. They had engaged in a "boyfriend and girlfriend" relationship for several months before residing together. Tr. p. 288. While residing together in J.B.S.'s apartment, A.B. moved her belongings into the apartment and helped with domestic functions such as cooking and cleaning. In addition, A.B. and J.B.S. shared the same bed and engaged in sexual relations. A.B. also completed a change of address and listed J.B.S.'s address as the address on her driver's license. J.B.S. and A.B. also planned to cohabitate after A.B. returned from her internship in Houston.

[18] The above-stated facts indicate that J.B.S. and A.B. maintained frequent contact with one another and engaged in tasks directed toward maintaining a common household. Further, although A.B. had threatened to move out of J.B.S.'s apartment during the course of the arguments leading up to the physical altercation between A.B. and J.B.S., A.B. had yet to do so. As such, we conclude that the above-stated facts are sufficient to support the inference that J.B.S. and A.B. were "living as if a spouse of the other." J.B.S.'s claim to the contrary amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Bailey*, 979 N.E.2d at 135. We therefore conclude that the State presented sufficient evidence to sustain J.B.S.'s conviction for Class A misdemeanor domestic battery.

The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.