**June CHAVIS, et al., Appellants,**

v.

**Bonnie PATTON and Janet Tyree, Appellees.**

**No. 53A05–9610–CV–422.**

Court of Appeals of Indiana.

July 23, 1997.

---

255

Robert T. Miller, Bloomington, for Appellants.

William H. Andrews, Angela F. Parker, Andrews Harrell Mann Chapman & Coyne, Bloomington, for Appellees.

## OPINION

SHARPNACK, Chief Judge.

This appeal arises from the trial court's award of attorney fees from the guardianship estate of Fronia Jones to one of her daughters, Bonnie Patton, in the amount of $12,259.63. The two restated issues for our review are whether the trial court properly awarded attorney fees for services which were related to the mediation and settlement of a claim existing prior to the guardianship and whether the trial court properly awarded fees for services which were related to the guardianship but which were initiated by Patton.[1] We affirm in part, reverse in part, and remand with instructions.

### FACTS

The facts most favorable to the judgment follow. In 1987, Patton sold her home and moved in with her parents to care for them. On February 26, 1992, Patton's parents conveyed a parcel of land to her. Thereafter,

---

1. The parties agree that those fees accrued by Patton while establishing the guardianship are properly chargeable to the guardianship pursuant to Ind.Code § 29-3-9-9(a). Therefore, we will not review the trial court's judgment awarding attorney fees with respect to those fees incurred by Patton while establishing the guardianship.

Patton's father died. Patton continued to care for her mother until June of 1993, when Jones was taken to live with another daughter, June Chavis.

On June 22, 1993, Jones and Chavis brought suit against Patton, alleging that she had fraudulently induced Jones to deed the real estate to her (the "real estate litigation"). Jones and Chavis sought to have the property returned to Jones. Patton retained attorney William Andrews to defend the suit.

In March of 1994, Patton also retained Andrews to begin guardianship proceedings on behalf of Jones.[2] On December 14, 1994, the trial court appointed the Bank One Trust Group ("Bank One") as guardian of Jones' estate, and the real estate litigation was continued. After the guardianship was established, Patton filed several requests with the trial court for action on various matters regarding Jones and her estate. Andrews continued to represent Patton's interests in all of the matters relating to the guardianship after Bank One was appointed.

After a hearing on August 23, 1995, the trial court denied a request for an advance of attorney fees from the estate for attorney David Coleman to pursue the pending real estate litigation on behalf of Jones. Rather, the trial court ordered the parties to attempt to settle the real estate litigation through mediation. The parties later reached an agreement whereby the guardianship estate would pay Patton $18,000 in exchange for the return of the real estate. The trial court approved the settlement.

On April 1, 1996, Patton filed a petition for an award of attorney fees from the guardianship estate. The trial court granted the petition on April 11, 1996. However, on the same day, Chavis filed an objection to the payment of attorney fees. On April 17, 1996, Bank One also filed an objection to the payment of attorney fees. On May 6, 1996, Patton filed a response to the objections. The trial court later held a hearing on the petition, objections, and response. On June 21, 1996, the trial court affirmed the initial order granting Patton's petition for attorney fees. Chavis now appeals, arguing that the trial court erroneously awarded fees which should not have been taxed against the guardianship estate.

## DISCUSSION

Ind.Code § 29–3–2–4 provides that "[a]ll findings, orders, or other proceedings under [the guardianship statute] shall be in the discretion of the court unless otherwise provided in this article." This court will reverse a trial court's judgment for an abuse of discretion only if the judgment is against the logic and effect of the facts and circumstances before the court, together with any reasonable inferences arising therefrom. *In re Guardianship of Wickersham*, 594 N.E.2d 498, 501 (Ind.Ct.App.1992). When reviewing the trial court's findings and judgment, we consider only the evidence most favorable to the prevailing party, and we neither reweigh the evidence nor reassess witness credibility. *Id.*

The guardianship statute specifically addresses payment of attorney fees by a guardianship estate. *See* I.C. § 29–3–9–9. This section governs the payment of expenses of appointment and other proceedings and provides:

"(a) Whenever a guardian is appointed for an incapacitated person or minor, the guardian shall pay all expenses of the proceeding, including reasonable medical, professional, and attorney's fees, out of the property of the protected person.

(b) *The expenses of any other proceeding under this article that results in benefit to the protected person or the protected person's property shall be paid from the protected person's property as approved by the court.*"

I.C. § 29–3–9–9 (emphasis added).[3]

## I.

The first issue for our review is whether the trial court properly awarded fees for

---

2. The record reflects that Patton was joined by other siblings in the initiation of the guardianship proceedings. However, the other siblings are not parties to this appeal.

3. Ind.Code § 29–3–4–4 also authorizes a guardianship estate to pay attorney fees:

"If not otherwise compensated for services rendered, any guardian, attorney, physician, or

those services relating to the mediation and settlement of the real estate litigation. Chavis contends that the matters relating to the real estate litigation were not reimbursable because they were outside the scope of the guardianship statute and were not for Jones' benefit.

■ Chavis' argument requires us to interpret the language of I.C. § 29–3–9–9(b), specifically the "under this article" and the "results in benefit" language. The interpretation of a statute is a question of law which is reserved for the courts. *Robinson v. Monroe County,* 658 N.E.2d 647, 649 (Ind.Ct. App.1995), *reh'g denied,* 663 N.E.2d 196 (Ind. Ct.App.1996), *trans. denied.* Our objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent expressed in the statute. *Id.* Where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and the rules of statutory construction.[4] *In re E. I.,* 653 N.E.2d 503, 507 (Ind.Ct.App.1995).

■ The court is required to determine and effect the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* In so doing, we consider the objects and purposes of the statute, as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.,* 600 N.E.2d 555, 558 (Ind.Ct.App.1992), *adopted on transfer,* 608 N.E.2d 699 (Ind.1993). When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura,* 465 N.E.2d 215, 218 (Ind.Ct. App.1984). We presume that the legislature

intends for this court to apply language in a logical manner consistent with the statute's underlying policy and goals. *Id.* The legislative intent as ascertained from the whole prevails over the strict, literal meaning of any word or term used therein. *Indiana Patient's Compensation Fund v. Anderson,* 661 N.E.2d 907, 909 (Ind.Ct.App.1996), *trans. denied.*

Chavis contends that the mediation and settlement of the real estate litigation were not within the purview of the "any other proceeding under this article" language of the statute which permits fees to be recovered from the guardianship. I.C. § 29–3–9–9(b). Chavis alleges that the real estate litigation was an entirely separate suit and, as a result, does not fall within the scope of the statute. In addition, Chavis contends that the mediation and settlement were not to Jones' "benefit" within the meaning of the statute.

■ The real estate litigation was commenced in June of 1993 when Chavis and Jones sought the return of the property. In March of 1994, Patton and the other siblings initiated guardianship proceedings. Guardianship was later established. The trial court then ordered mediation for the real estate litigation and appointed a guardian ad litem to represent Jones' interests. The trial court is authorized to appoint a guardian ad litem and to approve settlements of claims involving the protected person under the guardianship statute. *See* I.C. §§ 29–3–2–3, 29–3–9–7. As such, the trial court acted pursuant to the guardianship statute. Therefore, the mediation and settlement proceedings fall "under this article" and are within the general scope of the statute permitting fees. I.C. § 29–3–9–9(b).

other person whose services are provided in good faith and are beneficial to the protected person or the protected person's property is entitled to reasonable compensation and reimbursement for reasonable expenditures made on behalf of the protected person. These amounts may be paid from the property of the protected person as ordered by the court." However, because this section falls under the chapter relating to protective proceedings and single transactions, it is not applicable to the facts before us.

4. Although there is at least one case which applied I.C. § 29–3–9–9, the holding of that case depended on the resolution of different questions than those which are presented in the instant case. *See In re Wickersham,* 594 N.E.2d 498 (Ind.Ct.App.1992). Therefore, for our purposes, the part of the statute at issue before us has neither been interpreted nor constructed by an appellate court.

 Although the "under this article" language is satisfied, the "results in benefit" language was not satisfied. Specifically, we cannot conclude that the type of benefit Jones enjoyed from the mediation and settlement was the type contemplated by the legislature when it permitted fees to be recovered from the guardianship estate. The ultimate resolution of the real estate litigation was to restore ownership of the real estate to the guardianship with the obligation of the guardianship to pay Patton $18,000. Andrew's duty to represent Patton in an adversarial proceeding and the cost of that representation did not benefit Jones. In fact, Andrews' diligent representation of Patton's interests led directly to an $18,000 detriment to the guardianship and to Jones' interests. Every dollar Andrews was able to secure in this settlement was at the expense of the guardianship. Although Patton contends that the settlement itself was a benefit to Jones' estate because Jones ultimately received the real estate, the actual expenses of Patton's attorney in the mediation were incurred directly to the detriment of Jones. In the course of the mediation, Andrews' goal was to negotiate the most beneficial arrangement for Patton, not for Jones.

 We must construe statutes to prevent absurdity or a result the legislature, as a reasonable body, could not have intended. *Boushehry v. State,* 648 N.E.2d 1174, 1179 (Ind.Ct.App.1995), *reh'g denied.* By construing the statute in the manner urged by Patton, we would have to conclude that the legislature intended to allow opposing parties to collect fees from the guardianship estate in suits which are unrelated to the guardianship but which involve a protected person. To do so would result in an absurd construction of legislative intent, and we refuse to permit such a result. Patton would have been unable to collect the fees for the mediation and settlement from Jones if a guardianship had not existed. It is, therefore, unreasonable to permit Patton to recover fees for opposing Jones' interest in a suit merely because a guardianship was established. If there had been multiple defendants in the real estate litigation, surely a reasonable legislature would not have intended for all of the defendants to recover fees for mediation and

settlement merely because one of the plaintiffs is a guardianship.

 In addition, the legislature defines public policy through the enactment of statutes. *IDS Property Casualty Ins. Co. v. Kalberer,* 661 N.E.2d 881, 885 (Ind.Ct.App. 1996), *trans. denied.* The legislature could not have intended to create a public policy which encourages parties opposing a guardianship in unrelated litigation to vigorously pursue the suit because they could be reimbursed from the guardianship estate. Even if only those fees incurred during the mediation and settlement of the unrelated claims could be reimbursed from the guardianship estate, the opposing parties would have no incentive to promptly and diligently settle if they knew that all of the fees which were being incurred could be paid out of the guardianship estate. The public policy of establishing a guardianship over an estate to preserve the protected person's assets cannot be safeguarded by permitting opposing parties to be reimbursed for the mediation and settlement of unrelated claims.

 Moreover, the common law in Indiana with respect to attorney fees Indiana adheres to the American Rule which requires that parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Board of Comm'rs v. Wyant,* 672 N.E.2d 77, 79 (Ind.Ct.App.1996), *reh'g denied.* In addition, a losing party is not entitled to attorney fees. *Houston v. Booher,* 647 N.E.2d 16, 22 (Ind.Ct.App.1995). It is a rule of statutory construction that the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Drake v. Mitchell Community Schools,* 649 N.E.2d 1027, 1029–1030 (Ind.1995); *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Indeed, courts must presume the legislature is aware of the common law, and a statute will not be construed as changing the common law farther than the import of its words. *JKB, Sr.,* 660 N.E.2d at 605.

Patton would likely be considered the losing party in the settlement because she was forced to deed back the property and would not be able to recover fees at common law. *See Indiana Bd. of Public Welfare v. Tioga Pines Living Center, Inc.,* 622 N.E.2d 935, 946 (Ind.1993), *cert. denied,* 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654. Because the statute does not expressly and unmistakably state that *any* party's fees can be reimbursed by the guardianship regardless of the reason the fees were incurred as long as the services resulted in some type of a benefit to the protected person, we will not infer such a derogation of the common law. *See Drake,* 649 N.E.2d at 1029-1030.

In sum, we are bound by the cardinal rule of statutory construction which is to ascertain the intent of the drafter; all other rules are subservient thereto. *See State v. Carmel Healthcare Management, Inc.,* 660 N.E.2d 1379, 1386 (Ind.Ct.App. 1996), *trans. denied.* Because we must construe statutes to prevent absurdity or a result the legislature, as a reasonable body, could not have intended, we conclude that the legislature did not intend for the attorney fees incurred during the mediation and settlement of an unrelated claim by the party opposing the protected person to be recoverable from the guardianship estate under I.C. § 29-3-9-9(b). *See Boushehry,* 648 N.E.2d at 1179. Consequently, we conclude that on the facts of this case, Patton's fees incurred during mediation and settlement should not be recoverable from Jones' estate. Therefore, the trial court abused its discretion by including these fees in the attorney fee award.

## II.

The second issue for our review is whether the trial court erroneously award-ed attorney fees for services which were related to the guardianship but which were initiated by Patton. Chavis contends that the award "covered [Patton's] ongoing communication with the guardianship, through her attorney, in relation to matters which were of concern to Patton which included issues such as her mother Fronia Jones' finances, her contact with Fronia Jones, and the guardianship's handling of Fronia Jones' affairs." [5] Appellant's brief, pp. 6-7. Chavis argues that although the services concerned guardianship matters, it is a "matter of pure speculation that any and all of the other efforts of Mr. Andrews as Patton's attorney in any way impacted positively upon the protected person, Fronia Jones." Appellant's brief, p. 10. We disagree.

The trial court found that as a result of the petitions and actions of Patton, it entered several orders "for the benefit" of Jones, including in part an order for visitation with Jones, an order appointing a temporary guardian of the person, an order appointing a guardian ad litem, an order refusing to authorize the expenditure of Jones' funds to underwrite legal expenses for the real estate litigation, and an order with respect to the agreed settlement. Record, p. 54. Patton was the one who originally initiated the guardianship proceedings to protect Jones. During the hearing, Andrews testified that those actions taken were in the best interests of Jones as an extension of the original guardianship proceedings. (Record, p. 75) Therefore, the trial court acted within its discretion by concluding that actions taken by Patton after the guardianship was established and which directly related to the guardianship resulted in a benefit to Jones. *See* I.C. § 29-3-2-4.

---

5. We note that Chavis only raises a general challenge to these fees. Chavis failed to include an itemized list of the fees or to otherwise specify the services she is particularly challenging. Furthermore, other than Andrews' affidavit of attorney fees which consists of his own notes and abbreviations for the charges, the record contains no information concerning Patton's filings and the trial court's rulings on those filings. The record does not even contain a chronological case summary documenting Patton's actions.

On the points assigned as error, Chavis has the burden of presenting both a cogent argument and the appropriate portions of the record to establish the error. *See Posey v. State,* 622 N.E.2d 1032, 1034 (Ind.Ct.App.1993), *trans. denied.* Because she failed to do so, she waived a detailed consideration of those issues. *See id.* Therefore, we will only address Chavis' challenge to the general class of fees awarded for services relating to the guardianship and will not consider the propriety of each individual expense.

We note that unlike the interpretation of the statute with respect to fees incurred during the mediation and settlement of the real estate litigation, permitting these fees is not an absurd result. In the first issue, we found that attorney fees were not appropriately charged to the guardianship for a party opposing the protected person in litigation which existed prior to and apart from the guardianship proceedings. We concluded that the legislature could not have reasonably intended that the guardianship estate pay the expenses of all of the parties involved in preexisting litigation merely because a guardianship was involved.

However, the expenses challenged in this issue were incurred from petitions and actions taken in the guardianship proceedings itself. The services were an extension of the original guardianship proceeding initiated by Patton and were designed to further the interests of Jones in matters such as visitation. Although the sisters may have had different opinions on matters including finances and visitation, Patton was not an opposing party to Jones and Chavis in the guardianship proceedings. Patton was not seeking relief in the various motions to the detriment of the guardianship estate as she was in the real estate litigation. Therefore, interpreting I.C. § 29–3–9–9(b) to apply to these fees does not produce the same absurd result. In fact, we find that these types of fees were precisely the type contemplated by the legislature in drafting I.C. § 29–3–9–9(b). Therefore, because we will not reweigh the evidence with respect to the trial court's conclusion that these services resulted in a benefit to Jones, we find that the fees were recoverable. *See Wickersham,* 594 N.E.2d at 501. Accordingly, the trial court did not abuse its discretion by awarding attorney fees to Patton for services relating to the guardianship. *See id.*

### CONCLUSION

The trial court properly awarded attorney fees to Patton for services relating to the formation of the guardianship and to subsequent general guardianship matters. However, the trial court erroneously included fees incurred during the mediation and settlement of the real estate litigation. Therefore, we reverse the trial court's judgment to the extent that it included fees relating to the real estate litigation. We remand with instructions for the trial court to determine and subtract those fees from the order.

Affirmed in part, reversed in part, and remanded with instructions.

BARTEAU and DARDEN, JJ., concur.