In the Matter of the GUARDIANSHIP OF Donna K. PHILLIPS, an Adult

Helen Kay Hudson, Guardian, Appellant–Petitioner,

v.

Elizabeth Shoemaker, Successor Trustee, Appellee–Respondent.

No. 48A02–0910–CV–1039.

Court of Appeals of Indiana.

May 17, 2010.

Mark Maynard, Philip G. Decker, II, Decker, Lawyer & Maynard, Anderson, IN, Attorney for Appellant.

David W. Stone, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

Helen Kay Hudson, as guardian of Donna Phillips, appeals the trial court's orders denying her petition to revoke the Ollie H. Phillips and Donna K. Phillips Joint Revocable Living Trust (the "Joint Trust") and ordering the guardianship to pay the attorney fees of trustee Elizabeth Shoemaker. For our review, Hudson raises two issues:

1) whether the trial court erred by denying Hudson's petition to revoke the Joint Trust; and 2) whether the trial court abused its discretion by ordering payment of Shoemaker's attorney fees. On cross-appeal, Shoemaker raises the threshold issue of whether the trial court's denial of the petition to revoke the Joint Trust is an appealable order. Concluding the trial court's denial of the petition to revoke the Joint Trust is a final judgment and therefore appealable, the trial court did not err by denying the petition, and the trial court did not abuse its discretion by ordering the guardianship to pay Shoemaker's attorney fees, we affirm.

### Facts and Procedural History

Donna and Ollie Phillips were married for many years without children. Shoemaker was a close friend of Donna and Ollie beginning in 2003, and in later years she helped the couple manage their household and affairs. In 1992, Donna and Ollie executed reciprocal wills that provided the entire estate of each would pass first to the surviving spouse and the remainder to Riley Hospital for Children. Also in 1992, Donna gave a durable power of attorney to Ollie. In June 2006, Donna was diagnosed with Alzheimer's disease, and by October 2007 her condition deteriorated to the point that her treating physician deemed her no longer able to manage her affairs.

On February 11, 2008, Ollie created the Joint Trust, signing his own name and Donna's name by his power of attorney, and naming Ollie and Donna as grantors and initial primary beneficiaries, Ollie as initial trustee, and Shoemaker as successor trustee and remainder beneficiary. The Joint Trust contained a provision reserving the power of either or both Ollie and Donna, or their survivor, to revoke the Joint Trust, and was funded by the transfer of property including the marital residence, vehicle, household furnishings, and jewelry. The Joint Trust's primary purpose was "to provide for the support, maintenance, health and education of the surviving Grantor, at the death of the Grantor whose death shall first occur." Appendix of Appellant at 58. On December 26, 2008, Ollie died.

In January 2009, attorney Larry Robbins [1] was appointed guardian ad litem for Donna and filed a petition seeking appointment of a permanent guardian over Donna's person and estate. Following a hearing on May 5, 2009, the trial court found Donna to be incapacitated and, over Shoemaker's objection, appointed Hudson, a friend of Donna's, to be the guardian of her person and estate.

On May 19, 2009, Hudson filed a petition to do estate planning on Donna's behalf and revoke the Joint Trust. The trial court held a hearing on July 16 and August 27, 2009. Shoemaker appeared by counsel at the hearing, filed a brief opposing revocation of the Joint Trust, and filed a request for payment of her attorney fees. On September 24, 2009, the trial court issued its findings of fact, conclusions of law, and judgment:

### I. Findings of Fact

\* \* \*

22. That the execution of the Joint Trust was the culmination of the true estate plan of both Ollie and Donna determined when both were competent.

23. That the evidence establishes that continuation of the entire estate plan of Ollie and Donna is in the best interests of Donna and is consistent with her intentions prior to the incurrence [sic] of her mental and physical incapacities and

---

1. Robbins was the personal representative of Ollie's estate.

that it is not in the best interest of Donna that the Joint Trust be revoked.

### II. Conclusions of Law

1. That neither [Indiana Code sections] 29–3–9–4 nor [ ] 30–4–3–1.5, nor Indiana law, permit a guardian or the Court to revoke a valid trust executed as part of an estate plan without cause and when it is not determined based upon evidence to be in the best interests of an incompetent person.

*Id.* at 8. In its judgment, the trial court denied Hudson's petition to do estate planning and revoke the Joint Trust and declared the Joint Trust shall remain in effect. On November 3, 2009, the trial court issued its order granting Shoemaker's petition for attorney fees, in which it found Shoemaker duly retained attorney Ronald Fowler to represent her in opposing Hudson's petition to revoke the Joint Trust, the attorney's services were beneficial to Donna, and the attorney's fees of $5,850 plus costs of $254 were reasonable. Hudson now appeals.[2]

### Discussion and Decision

#### I. Appealable Order

■ Shoemaker argues the trial court's order denying the petition to revoke the Joint Trust is not properly appealable, noting that order was not certified for interlocutory appeal and contending it is neither a final judgment nor an interlocutory order appealable as of right. A judgment is a final judgment if "it disposes of all claims as to all parties." Ind. Appellate Rule 2(H)(1); *see also Bueter v. Brinkman,* 776 N.E.2d 910, 912–13 (Ind.Ct.App. 2002) (a final judgment "disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts

an end to the particular case as to all of such parties and all of such issues") (quotation omitted).

■ The trial court's order denying Hudson's petition to revoke the Joint Trust disposed of the issue of whether the Joint Trust would remain in effect. Aside from that issue, the previously resolved issue of the appointment of a permanent guardian for Donna, and the issue of attorney fees, no other issues were raised in the pleadings that are part of the record in this case. Thus, it is immaterial that the guardianship remained open. It is also immaterial that ownership, as between Ollie's estate and the Joint Trust, of certain annuities and life insurance was not yet ascertained. Ownership of this property was, as far as the record shows, only a potential source of dispute between Hudson and Shoemaker and not an issue the trial court was asked to rule on. *See* Transcript at 282 (trial court stating it was "not being asked to decide" which assets were owned by the Joint Trust and which by Ollie's estate). Therefore, the trial court's denial of Hudson's petition to revoke the Joint Trust is a final judgment appealable as of right, and we proceed to the merits of Hudson's appeal.

#### II. Petition to Revoke Joint Trust

##### A. Standard of Review

■ Here, the trial court entered findings of fact and conclusions of law upon Shoemaker's verbal request at the close of the evidence. In such cases, we review the findings and conclusions as if the trial court issued them sua sponte. *Leever v. Leever,* 919 N.E.2d 118, 122 (Ind. Ct.App.2009). First we determine wheth-

---

**2.** Hudson filed a notice of appeal on October 26, 2009, relative to the trial court's denial of her petition to do estate planning and revoke

the Joint Trust, and a supplemental notice of appeal on November 13, 2009, relative to the trial court's order of attorney fees.

er the evidence supports the findings, and second we determine whether the findings support the judgment. *Humphries v. Ables*, 789 N.E.2d 1025, 1030 (Ind.Ct.App. 2003). We consider only the evidence most favorable to the judgment and reasonable inferences therefrom, and we do not reweigh the evidence or reassess witness credibility. *Id.* The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.* We review questions of law de novo and owe no deference to the trial court's legal conclusions. *Shriner v. Sheehan*, 773 N.E.2d 833, 841 (Ind.Ct.App. 2002), *trans. denied.*

### B. Guardian's Power to Revoke Living Trust

■ In general, a guardian of an incapacitated person "is responsible for the incapacitated person's care and custody and for the preservation of the incapacitated person's property to the extent ordered by the court." Ind.Code § 29–3–8–1(b). Hudson filed her petition to do estate planning and revoke the Joint Trust "pursuant to [Indiana Code section] 29–3–9–4 generally and [Indiana Code section] 30–4–3–1.5(f) particularly." App. of Appellant at 13. Indiana Code section 29–3–9–4 (2009) [3] is part of the guardianship statute and provides authority for a trial court, following a hearing and based on the evidence presented, to authorize "the guardian to take steps directed to estate planning for the protected person." *In re Guardianship of E.N.*, 877 N.E.2d 795, 798 (Ind. 2007).[4] Indiana Code section 30–4–3–1.5(f), part of the trust code, provides "[a] guardian of a settlor may exercise the settlor's powers with respect to revocation, amendment, or distribution of trust property only with the approval of the court supervising the guardianship." The trial

---

**3.** On March 12, 2010, the general assembly repealed Indiana Code section 29–3–9–4, effective July 1, 2010. P.L. 6–2010, § 40. The same legislation enacted a new Indiana Code section 29–3–9–4.5 (2010), which, effective July 1, 2010, provides authority for a trial court to authorize the guardian to make certain specified transactions involving the protected person's property. *See* P.L. 6–2010, § 12.

**4.** Specifically, the statute provides:

(a) Upon petition of the guardian ... the court may, after hearing and by order, authorize the guardian to apply or dispose of the principal or income of the estate of the protected person that *the court determines to be in excess of that likely to be required for the protected person's future support* or for the future support of the protected person's dependents during the lifetime of the protected person, in order to carry out the estate planning that the court determines to be appropriate for the purposes of minimizing current and prospective income, estate, or other taxes. The court may accordingly authorize the guardian to make gifts ... on behalf of the protected person to or for the benefit of the prospective legatees, devisees, or heirs ... or to other individuals or charities, to whom or in which it is shown that the protected person had an interest. In addition, the court may also authorize the guardian to:

(1) apply or dispose of the excess principal or income for *any other purpose the court decides is in the best interests of the protected person* or the protected person's property, spouse, or family;
* * *

(b) In a hearing upon a petition filed under subsection (a), the court shall determine whether the planned disposition, renunciation, disclaimer, release, or exercise is *consistent with the apparent intention of the protected person*, which determination shall be made on the basis of evidence as to the declarations, practices, or conduct of the protected person or, in the absence of that type of evidence, upon the court's determination as to what a reasonable and prudent person would do under the same or similar circumstances as are *shown by the evidence presented to the court.*

Ind.Code § 29–3–9–4 (2009) (emphases added).

court interpreted these statutes to mean Indiana law does not permit a guardian or a court "to revoke a valid trust executed as part of an estate plan without cause and when [such revocation] is not determined based upon evidence to be in the best interests of an incompetent person." App. of Appellant at 8. We agree with this interpretation of the statutes, adding that, as indicated by Indiana Code section 29–3–9–4 (2009), determination of an incapacitated person's best interests accounts for both the person's need for financial support and his or her apparent intentions regarding the disposition of property.[5]

■ Therefore, the only question remaining is whether evidence supports the trial court's findings that Ollie's creation of the Joint Trust was consistent with Donna's intentions and its revocation would not be in Donna's best interests. As to Donna's intentions, Shoemaker testified that at a meeting at Donna's and Ollie's home three to four months before the Joint Trust was created, both Donna and Ollie stated in the presence of their attorney, J.R. Bulita, that they "wanted everything to go to [Shoemaker] after their deaths." Tr. at 151. Bulita testified Donna and Ollie were long-term clients who worked "[v]ery much as a team" and contacted him with a desire to "leave everything to [Shoemaker]" following their deaths because "she's like a daughter to us." *Id.* at 226. As Donna arguably lacked capacity to make a new will, Bulita drafted the Joint Trust and ancillary documents and reviewed the documents with both Ollie and Donna on several occasions over four months before the Joint Trust was executed. As to Donna's financial best interests, we observe that following Ollie's death,

Donna became the beneficiary of the Joint Trust during her lifetime, which had the purpose of providing for her support and maintenance. Hudson does not allege there is any evidence that Shoemaker, as trustee, has mismanaged the Joint Trust or Donna's guardianship estate lacks sufficient assets to provide for her care. To the contrary, the guardianship report filed in May 2009 showed the guardianship had cash assets of $201,555 and Donna received social security and pension payments totaling $1,749 monthly.

Hudson points to conflicting evidence, specifically, the fact Donna may have lacked capacity to do estate planning when creation of the Joint Trust was discussed, and Donna's subsequent declarations to her guardian ad litem, Robbins, that she did not consider Shoemaker to be a friend and Shoemaker was "money hungry." App. of Appellant at 73, 74. As the resolution of such conflicting evidence is a question of weight and credibility reserved for the trial court, *see Humphries,* 789 N.E.2d at 1030, we must conclude the evidence supports the trial court's findings, which in turn support its judgment denying Hudson's petition to revoke the Joint Trust. Therefore, the trial court did not err in denying the petition.

### III. Attorney Fees

■ From the trial court's order granting Shoemaker's request for payment of her attorney fees from the guardianship, we infer it based its order on the guardianship statute, Indiana code article 29–3. We review an order of attorney fees under the guardianship statute for an abuse of discretion. *See Chavis v. Patton,* 683 N.E.2d 253, 256 (Ind.Ct.App.1997) (citing Ind.Code § 29–3–2–4). An abuse of dis-

---

5. Because this appeal is governed by the statutes that were in effect when the trial court issued its order and that remain in effect until July 1, 2010, we express no opinion regarding whether the statutes effective starting July 1, 2010, would require a different analysis or result.

cretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *In re Guardianship of Atkins*, 868 N.E.2d 878, 883 (Ind.Ct.App.2007), *trans. denied.*

Indiana Code section 29–3–9–9 declares:

(a) Whenever a guardian is appointed for an incapacitated person or minor, the guardian shall pay all expenses of the proceeding, including reasonable medical, professional, and attorney's fees, out of the property of the protected person. (b) *The expenses of any other proceeding under this article that results in benefit to the protected person or the protected person's property shall be paid from the protected person's property as approved by the court.*

(Emphasis added.)[6] Shoemaker argues this statute supports the trial court's order of attorney fees, and Hudson contends it does not, relying upon *Chavis*.

In *Chavis*, the future ward, before the guardianship proceedings began, sued her daughter for return of a parcel of real estate, alleging the daughter fraudulently induced the ward to deed the real estate to her. Thereafter, the daughter initiated the guardianship proceedings and "filed several requests with the trial court for action on various matters regarding [the ward] and her estate," and the trial court ordered the daughter and the ward to mediate and attempt to settle the real estate litigation. *Id.* at 256. On appeal of an award of attorney fees from the guardianship to the daughter, this court concluded all of the daughter's attorney fees arose from guardianship proceedings "under this

article" within the meaning of Indiana Code section 29–3–9–9(b). *See id.* at 257, 259. The statute's other requirement, that attorney services "result[ ] in benefit" to the ward or the ward's property, was met by the daughter's attorney's services relating directly to the ward's finances, the ward's visitation with her daughter, and appointment of a temporary guardian and a guardian ad litem, but was not met by the daughter's attorney's involvement in settlement of the real estate litigation. *Id.* at 258–59. The settlement, though approved by the trial court supervising the guardianship, resulted in restoring ownership of the real estate to the guardianship but obliging the guardianship to pay the daughter $18,000, leading "directly to an $18,000 detriment to the guardianship and to [the ward's] interests." *Id.* at 258. Therefore, the trial court's award of attorney fees from the guardianship to the daughter was proper under Indiana Code section 29–3–9–9(b) with respect to the general guardianship matters but improper with respect to the mediation and settlement of the real estate litigation. *Id.* at 260.

Here, Shoemaker's attorney fees were incurred in the guardianship proceeding, and her position therein, though adverse to Hudson's petition to revoke the Joint Trust, did not seek any relief to the detriment of Donna or the guardianship. Rather, the trial court found the services of Shoemaker's attorney, in opposing Hudson's petition to revoke the Joint Trust of which Donna was a beneficiary, "resulted in [Donna]'s benefit in protecting her assets for her use and in furthering her

6. Indiana Code section 29–3–4–4 also authorizes a trial court to order payment, from the protected person's property, of reasonable attorney fees for services that "are provided in good faith and are beneficial to the protected person or the protected person's property." However, because this section falls under the chapter of the guardianship statute governing protective proceedings and single transactions "without the appointment of a guardian," Ind.Code § 29–3–4–1, it does not apply to the facts of this case. *See Chavis*, 683 N.E.2d at 256 n. 3.

overall estate plan." App. of Appellant at 12. In light of this finding, which for the reasons explained in part II, *supra*, is supported by evidence in the record, the trial court's order of attorney fees is more akin to the award of attorney fees for general guardianship matters affirmed in *Chavis*, than to the attorney fees award for settlement of real estate litigation directly adverse to the ward, which was reversed in *Chavis*. Therefore, the trial court's order that the guardianship pay Shoemaker's attorney fees is supported by Indiana Code section 29–3–9–9(b), and accordingly, the trial court did not abuse its discretion.[7]

### Conclusion

The trial court's denial of Hudson's petition to revoke the Joint Trust is a final judgment and therefore appealable, and the trial court did not err by denying the petition and did not abuse its discretion by ordering the guardianship to pay Shoemaker's attorney fees. The judgment of the trial court is therefore affirmed.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

---

7. Hudson concedes the amount of the fees was reasonable. *See* Brief of Appellant at 11

