**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 17 2014, 9:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**WILLIAM MOSHER**
North Webster, Indiana

ATTORNEY FOR APPELLEE:

**DAVID C. KOLBE**
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM MOSHER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 43A05-1305-GU-286 |
| | ) | |
| HAESUK YI MOSHER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Michael W. Reed, Judge
Cause No. 43C01-1212-GU-68

**February 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

William Mosher ("Father") appeals the trial court's dismissal of his petition for guardianship of his incapacitated adult daughter, C.Y.M., for lack of jurisdiction. Because we conclude that the trial court acted within its discretion in finding jurisdiction to be lacking based on C.Y.M.'s Florida residency, we affirm.

**Facts and Procedural History**

Haesuk Yi Mosher ("Mother") and Father were married in 1979 in Mother's native country of South Korea. Thereafter, the couple resided in Alabama. Mother and Father had two children, a son and a daughter. The daughter, C.Y.M., was born on September 3, 1984. From birth, C.Y.M. has suffered from a chromosome disorder called Penta X Syndrome. Her IQ is between thirty and forty, and she has the mental development of a three- to five-year-old. As a result, she needs supervision and has lived with one or both of her parents for her entire life. She receives Social Security benefits, which are administered for her benefit by Mother as her representative payee.

In 1993, Father sought a divorce in Madison County, Alabama. It is unclear whether the paperwork was finalized, but Mother and Father continued to reside together and were remarried in 1994 in Tennessee. At some point during 2005 or 2006, they moved to Florida. On May 11, 2011, Father drafted a "Legal Separation Agreement," which Mother signed. The agreement stated that there were no children born to the parties' marriage. In the fall of 2011, Father moved out, leaving Mother with C.Y.M. He filed a complaint for legal

separation and then a complaint for dissolution, all in Tennessee. On November 14, 2012, Mother, acting by counsel, filed a petition for conservatorship over C.Y.M. in Tennessee.

Shortly thereafter, Father contacted Mother about his taking C.Y.M. from Florida to Indiana to visit some of Father's relatives. On November 23, 2012, Father signed a notarized document stating that with Mother's permission, he was removing C.Y.M. from Florida for ten days to visit relatives. The document provided that the authorities would be notified if Father failed to return C.Y.M. to Mother in Florida by 4:00 p.m. on December 2, 2012. Appellee's App. at 15. Before he left Florida with C.Y.M., Father filed a report with the local sheriff claiming that Mother had physically abused C.Y.M. The sheriff reported Father's allegations to the Florida Department of Child and Family Services ("FDCFS"). *See Id.* at 18 (containing Father's allegation that Mother "choked [C.Y.M.], hit her with a towel and spanked her on the legs in the last few months."). A week later, FDCFS closed the case, finding in part that collateral interviews produced no evidence that Mother posed a risk to C.Y.M. *Id.* at 19.

After Father left Florida with C.Y.M., he took her to visit his and Mother's son (C.Y.M.'s brother) in Alabama. Shortly thereafter, the son kicked them out, and Father took C.Y.M. to North Webster, Indiana, to visit his daughter (C.Y.M.'s half-sister) and her family. On November 30, 2012, Father sent Mother an email stating that he needed to get new brakes for his vehicle and would return C.Y.M. to her "next weekend" instead of on December 2. *Id.* at 17. On the evening of December 2, 2012, when Father had failed to return C.Y.M. as agreed, Mother notified the local sheriff's office, which called Father in Indiana. Father told

3

the sheriff that he did not plan to return C.Y.M. at that time. On December 4, 2012, Mother received a letter from the Social Security Administration indicating that she was being replaced by Father as C.Y.M.'s representative payee. On December 6, 2012, Father filed a petition in Kosciusko County, Indiana, seeking appointment as guardian over C.Y.M. The next day, in furtherance of Father's petition for guardianship, C.Y.M. underwent a psychiatric/psychological evaluation in Indiana. That same day, Father's counsel sent Mother a letter indicating that C.Y.M. would be returned to Florida soon. The trial court granted Father's petition for guardianship on December 20, 2012.

On January 3, 2013, Mother's petition for conservatorship was dismissed by the Tennessee trial court for lack of jurisdiction. On January 22, 2013, Mother filed a pro se motion to set aside the Indiana guardianship order due to insufficient service. At a February 2013 hearing, the trial court advised Mother that there were matters that she had not properly placed before the court, that she needed to hire Indiana counsel, and that the trial court needed to continue the guardianship while investigating the matters pending in the Tennessee court. On March 6, 2013, Mother, acting by counsel, filed a motion to dismiss the guardianship for lack of jurisdiction. She also alleged that Father had committed certain improprieties. On March 27, 2013, the trial court met in camera with counsel for both parties, and after consultation and stipulations were entered, the trial court granted Mother's motion to dismiss the guardianship for lack of jurisdiction. Shortly thereafter, the trial court discovered that the order had not been an agreed order. On April 26, 2013, after each party submitted a proposed corrective order, the trial court issued an amended order dismissing the

4

guardianship for lack of jurisdiction. Father now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

In his pro se appeal, Father contends that the trial court erred in dismissing his guardianship petition for lack of jurisdiction. He has failed to include the applicable standard of review in his brief as required by Indiana Appellate Rule 46(A)(8)(b).[1] The trial court is vested with discretion in making determinations concerning the guardianship of an incapacitated person, and we therefore review using an abuse of discretion standard. *In re Guardianship of Atkins*, 868 N.E.2d 878, 883 (Ind. Ct. App. 2007), *trans. denied* (2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences favorable to the judgment. *Chavis v. Patton*, 683 N.E.2d 253, 256 (Ind. Ct. App. 1997).

Father challenges the trial court's dismissal of his petition for guardianship for lack of jurisdiction. In guardianship matters, jurisdiction is governed by Indiana Code Section 29-3.5-2-3, which states,

> A court of this state has jurisdiction to appoint a guardian or issue a protective order for a respondent if:
>
> (1) this state is the respondent's home state;

---

[1] *See* Ind. Appellate Rule 46(A)(8)(b) (stating that "[t]he argument must include for each issue a concise statement of the applicable standard of review"). It is well settled that pro se litigants are held to the same standard as licensed attorneys. *Goossens v. Goossens*, 829 N.E.2d 36, 43 (Ind. Ct. App. 2005).

(2) *on the date the petition is filed*, this state is a significant connection state *and*:

(A) the respondent does not have a home state or a court of the respondent's home state has declined to exercise jurisdiction because this state is a more appropriate forum; or

(B) the respondent has a home state, *a petition for an appointment or order is not pending* in a court of that state *or another significant connection state*, and, before the court makes the appointment or issues the order:

(i) a petition for an appointment or order is not filed in the respondent's home state;

(ii) an objection to the court's jurisdiction is not filed by a person required to be notified of the proceeding; and

(iii) the court in this state concludes that it is an appropriate forum under the factors set forth in section 6 of this chapter;

(3) this state does not have jurisdiction under either subdivision (1) or (2), the respondent's home state and all significant connection states have declined to exercise jurisdiction because this state is the more appropriate forum, and jurisdiction in this state is consistent with the constitutions of this state and the United States; or

(4) the requirements for special jurisdiction under section 4 of this chapter are met.

(Emphases added.)

Here, Father does not dispute the trial court's determination that Florida is C.Y.M.'s home state.[2] Rather, he argues that Indiana is a significant connection state with jurisdiction as outlined in in subparagraph (2)(B). Indiana Code Section 29-3.5-1-2(15) defines a "significant connection state" as "a state, other than the home state, with which a respondent has a significant connection other than mere physical presence and in which substantial evidence concerning the respondent is available." In other words, Father argues that C.Y.M. has significant connections with Indiana based on the following: her presence in the state for approximately two weeks with Father, for what originally was characterized as a visit with her half-sister; Father's having obtained a driver's license and leased a residence; and (*after* the date of Father's filing the guardianship petition) her having undergone a psychiatric/psychological evaluation. Father also attacks Mother's motion to dismiss as untimely under subparagraph clause (2)(B)(ii), asserting that Mother was required to file her objection to his guardianship petition before the trial court issued the guardianship order, which she did not. We disagree, finding that for reasons discussed below, we need not address subparagraph clause (2)(B)(ii).[3]

---

[2] Indiana Code Section 29-3.5-1-2(6) defines "home state" to mean either

(A) The state in which the respondent was physically present, including any period of temporary absence, for at least six (6) consecutive months immediately before the filing of a petition for a protective order or the appointment of a guardian.
(B) In the case of a respondent for whom no state satisfies clause (A), the state in which the respondent was physically present, including any period of temporary absence, for at least six (6) consecutive months ending within the six (6) months prior to the filing of the petition.

[3] We note that with respect to Mother's opportunity to object, the record indicates that Father knew that Mother would be at her sister's home in Tennessee during C.Y.M.'s time away with him, yet he sent notice of his Indiana proceedings to two addresses where she would not be present to actually receive the notification.

7

Even assuming that C.Y.M. has significant connections with Indiana, we conclude that subparagraph (2)(B) does not apply in this case. First, the operative date listed in subparagraph (2)(B) is "the date of filing," here, December 6, 2012. The subparagraph requires not only that Indiana be a significant connection state on the date the guardianship petition is filed, but also that there be no petitions pending in either C.Y.M.'s home state of Florida or other significant connection states. On December 6, 2012, Mother's Tennessee petition for conservatorship over C.Y.M. was pending (having been filed on November 14, 2012, and not dismissed until January 3, 2013). Mother testified that although she and C.Y.M. had been Florida residents for seven or eight years, they spent a significant portion of their time in Tennessee with Mother's sister.[4] She testified that she had filed her conservatorship petition in Tennessee because the marital dissolution cause was also pending there and that Father filed the latter in Tennessee based on his ownership of a house there. At the close of the February 12, 2013 hearing on Mother's motion to set aside Father's Indiana guardianship petition, the trial court indicated its intent to contact the Tennessee court to investigate the impact of those proceedings on the Indiana guardianship proceedings. Thus, Tennessee bore a significant evidentiary connection to C.Y.M. As a result, the pendency of Mother's Tennessee conservatorship petition at the time of Father's filing is

---

[4] Mother's testimony is inconclusive concerning the frequency of her and C.Y.M.'s visits to Tennessee, i.e., she used phrases such as "live in my sister's house," "domiciled in my sister's house," and "stay in my sister's house from time to time." Tr. at 10.

enough to render subparagraph 2(B) inapplicable and therefore not a proper basis for

jurisdiction.[5]

---

[5] Finally, we note that even in cases where the extensive jurisdictional requirements are met under Indiana Code Section 29-3.5-2-3, the trial court is afforded broad discretion in exercising jurisdiction as outlined in Indiana Code Section 29-3.5-2-6. Section 6 addresses the trial court's determinations concerning what constitutes a more appropriate forum and clearly gives the court discretion to decline to exercise its jurisdiction in favor of another state where that other state constitutes a more appropriate forum. Indiana Code Section 29-3.5-2-6 states,

(a) A court of this state having jurisdiction under section 3 of this chapter to appoint a guardian or issue a protective order may decline to exercise its jurisdiction if it determines at any time that a court of another state is a more appropriate forum.

(b) If a court of this state declines to exercise its jurisdiction under subsection (a), it shall either dismiss or stay the proceeding. The court may impose any condition the court considers just and proper, including the condition that a petition for the appointment of a guardian or issuance of a protective order be filed promptly in another state.

(c) In determining whether it is an appropriate forum, the court shall consider all relevant factors, including:

(1) any expressed preference of the respondent;
(2) whether abuse, neglect, or exploitation of the respondent has occurred or is likely to occur, and which state could best protect the respondent from the abuse, neglect, or exploitation;
(3) the length of time the respondent was physically present in or was a legal resident of this or another state;
(4) the distance of the respondent from the court in each state;
(5) the financial circumstances of the respondent's estate;
(6) the nature and location of the evidence;
(7) the ability of the court in each state to decide the issue expeditiously and the procedures necessary to present evidence;
(8) the familiarity of the court of each state with the facts and issues in the proceeding; and
(9) if an appointment were made, the court's ability to monitor the conduct of the guardian.

Simply put, the trial court acted within its discretion in concluding that it lacked jurisdiction and in dismissing Father's guardianship petition. Father's arguments amount to invitations to reweigh evidence, which we may not do. Accordingly, we affirm.

Affirmed.

BAKER, J., and NAJAM, J., concur.