## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2017, 9:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Guardianship of Sharon Izzo,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 24, 2017

Court of Appeals Case No.
53A05-1610-GU-2447

Appeal from the Monroe Circuit Court.
The Honorable Stephen R. Galvin, Judge.
Trial Court Cause No.
53C07-1402-GU-12

**Shepard, Senior Judge**

[1] The trial court determined that Sharon Izzo, a seventy-nine-year-old who is subject to a guardianship, should move permanently to the nursing home where she had been temporarily placed for physical rehabilitation. Izzo appeals. We conclude there is ample evidence to support the court's decision.

In June 2014, after a hearing at which Izzo was represented by counsel, the court adjudicated Izzo to be an incapacitated person and appointed Elizabeth Ruh as the guardian of her person and estate. Izzo lived alone in an apartment and wanted to stay there despite cognitive challenges. The court ruled that Ruh could not permanently change Izzo's residence without prior court approval, but short-term emergency stays were permissible. Izzo appealed, and this Court affirmed. *In re Guardianship of Izzo*, Cause No. 53A05-1407-GU-320 (Ind. Ct. App. Apr. 17, 2015).

On October 2, 2015, Ruh filed a petition for an order to move. The court held a hearing at which Ruh clarified she was not seeking an immediate order to move Izzo to a nursing home but was concerned about Izzo's declining health. The Court concluded "no action is necessary on the petition at this time." Appellant's App. p. 8. The court instructed Ruh that she was "empowered to make emergency changes in Ms. Izzo's residence, at any time, in order to ensure Ms. Izzo's health and safety." *Id.*

On July 29, 2016, Izzo was hospitalized, followed by a temporary placement in a nursing home for physical rehabilitation. On August 25, 2016, Ruh filed a second petition, requesting permission to change Izzo's residence to the nursing home. The court granted Ruh's petition after two evidentiary hearings, concluding it was in Izzo's best interests.

[5]     Izzo argues the court erred in determining that she should permanently change her residence. The statute that governs changing the residence of an incapacitated adult provides:

> A guardian (other than a temporary guardian), a volunteer advocate for seniors, or a volunteer advocate for incapacitated adults appointed under IC 29-3-8.5 may, with the approval of and under such conditions as may be imposed by the court after notice and hearing, change the physical presence of the protected person to another place in Indiana or to another state if the court finds that such a change is in the best interests of the protected person. Upon such a change, the guardianship may be limited or terminated by the court.

Ind. Code § 29-3-9-2 (2006).

[6]     "All findings, orders, or other proceedings under this article shall be in the discretion of the court unless otherwise provided in this article." Ind. Code § 29-3-2-4 (2001). The parties agree that the appropriate standard of review is abuse of discretion. An abuse occurs only when the decision of the court is clearly against the logic and effect of the facts and circumstances presented. *In re Guardianship of Atkins*, 868 N.E.2d 878 (Ind. Ct. App. 2007), *trans. denied*. We consider only the evidence most favorable to the prevailing party, and we neither reweigh the evidence nor reassess witness credibility. *Chavis v. Patton*, 683 N.E.2d 253 (Ind. Ct. App. 1997).

[7]     During a hearing on Ruh's first petition for order to move, Ruh told the court Izzo needed extensive medical treatment, including monthly doctor's appointments and frequent changes in medication. Izzo was diagnosed with asthmatic bronchitis and needed to stop smoking, but she had smoked in her

apartment and allowed neighbors to smoke there. The court denied the request but informed Ruh she should file another petition if Izzo's health degenerated.

[8] During a September 6, 2016, evidentiary hearing on Ruh's second petition to move Izzo, Ruh reported that Izzo had become prone to recurring lung infections and had been hospitalized twice since the last hearing. Her medical condition was so perilous that "she would have qualified for Hospice Services in her home" without further intervention. Tr. p. 32. As of September 6, Izzo was undergoing physical rehabilitation at a nursing home, and Izzo's mental and physical health had improved during her stay.

[9] At a second hearing on September 20, 2016, medical reports indicated Izzo had been diagnosed with mild dementia, hypertension, COPD, and osteoarthritis, among other conditions. Tr. Ex. Vol. p. 4. The court heard evidence that Izzo denied the seriousness of her medical conditions and lacked insight into her limitations. When Izzo lived in her apartment, her neighbors had accessed her medications, gave her a prescription pill for which she had no prescription, and smoked in her presence. Izzo also experienced an incident where a neighbor left threatening voice mails. Prior to Izzo's hospitalization, a home health evaluator determined Izzo had pneumonia and was slightly malnourished.

[10] Izzo's physical health and mental acuity had greatly improved while living at the nursing home, which several witnesses attributed to the controlled environment and oversight of her medicine. An Alzheimer's educator who had worked with Izzo for several years was concerned her mental and physical

health would deteriorate if she returned to her apartment because she had a history of refusing to follow guidance from home health care providers.

[11] Even Izzo's witnesses, who had provided home health care and transportation services to Izzo for years, indicated that a "change of venue" from the apartment or a move to a "different home environment" would be good for Izzo, citing reports of neighbors sharing medication with her and instances of her giving food away. Tr. pp. 63, 66. Izzo's doctor stated she needed to be in a non-smoking environment.

[12] The trial court appropriately accommodated Izzo's desire for independence, first by instructing that Ruh could not move Izzo without court approval, and second by holding several thorough hearings on the second petition. The record amply supports the court's finding that a permanent move to the nursing home was in Izzo's best interests, and the decision was not against the logic and effect of the facts and circumstances of the case. Izzo points to other evidence indicating that her medical conditions were not as severe as Ruh depicted and that she could live safely in her apartment, but this argument is a request to reweigh the evidence.

[13] For the reasons stated above, we affirm the judgment of the trial court.

[14] Affirmed.

Robb, J., and Mathias, J., concur.