Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2012, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL T. DHAENENS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1111-CR-567 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1107-FC-1129

**May 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Paul T. Dhaenens appeals his convictions for the Class C felony criminal confinement and Class D felony domestic battery of his former live-in girlfriend. He argues both that his convictions violate Indiana double-jeopardy principles because they are based on the same bodily injury and the evidence is insufficient to support his domestic-battery conviction because the evidence does not show that he is or was living as the victim's spouse. We find that Dhaenens's convictions do not violate the actual-evidence test because the victim had several bodily injuries. In addition, we find that the evidence proves that Dhaenens and the victim were living as spouses shortly before the incident in this case. We therefore affirm the trial court.

**Facts and Procedural History**

The facts most favorable to the judgment reveal that Dhaenens and Megan Bonar dated and lived together off-and-on for about a year. Megan has two children, one of whom is J.I., who was five years old at the time of trial. Dhaenens is not the father of Megan's children. Dhaenens and Megan's relationship ended on July 1, 2011, when Dhaenens "kicked [her] out." Tr. p. 59.

A few days later, on July 5, 2011, Megan and J.I. stayed at the Dollar Inn in Greenfield, Indiana, because she had an appointment the next day in Indianapolis. At this time, all of Megan's belongings were still at Dhaenens's house. Around 8:00 or 8:30 a.m. the next morning, Dhaenens went to Megan's motel room. J.I. was still asleep. Dhaenens and Megan talked until J.I. woke up, at which point the trio walked to a nearby gas station to get J.I. breakfast. When they returned to the motel room, Megan received a

2

phone call from her new boyfriend, Dave Nelson. *Id.* at 44-45. Megan started living with Dave after Dhaenens kicked her out. Dhaenens grabbed the cell phone from Megan and spoke with Dave. An angry Dhaenens said that he did not understand why Dave would step in the way of his relationship with Megan. *Id.* at 46. Dhaenens returned the phone to Megan, who then spoke with Dave. After Megan ended her phone conversation with Dave, Dhaenens, still angry, said that he did not understand how things could be over. Megan was scared and asked Dhaenens to leave. Dhaenens refused and said they needed to talk. Standing her ground, Megan again told Dhaenens to leave because she had made her choice and "it[']s over." *Id.* at 49.

Instead of leaving, Dhaenens locked the hotel-room door. Megan became even more scared. Megan headed for the door, but Dhaenens intercepted her, pushed her down on the floor, and told her that she was not leaving. Megan then started for the room phone, but Dhaenens beat her there and ripped the phone cord out of the wall. Dhaenens sat on Megan as she tried to get away. Megan hit Dhaenens in the head with her cell phone and bit him in an attempt to get him off of her. Megan also yelled at J.I. to beat on the windows in order to summon help. Megan freed herself and tried to run for the door again, but Dhaenens pushed her to the ground a second time and hit her in the face with his fist. Dhaenens pinned Megan's arms to the ground with his legs, put his hands around her throat, and told J.I. that he was "going to kill [her] this time." *Id.* at 52. Although it was hard for Megan to breathe, she never lost consciousness. At some point Dhaenens called 911 to report that Megan was assaulting him.

3

Hancock County Deputy Sheriff Daniel Devoy was in the area and responded to the Dollar Inn on reports of screaming. Deputy Devoy was directed to the motel room by various bystanders. Deputy Devoy looked in the window of the locked room and observed Dhaenens on top of Megan, striking her and attempting to choke her. Believing Megan to be in "imminent danger," Deputy Devoy drew his weapon and kicked in the door. *Id.* at 80. Dhaenens jumped up and rushed to the still-chained door. Deputy Devoy pointed his gun at Dhaenens and told him that if he did not open the door, he would shoot. Dhaenens opened the door.

Once Deputy Devoy entered the room, there was chaos: Megan was screaming, Dhaenens was upset and screaming, and the room was in shambles. Deputy Devoy noticed that Dhaenens was bleeding from his head. Dhaenens was also babbling, but he did not make sense to Deputy Devoy, who assumed that Dhaenens was under the influence of something. At gunpoint, Deputy Devoy ordered Dhaenens to hit the floor; Dhaenens complied. At this point, Deputy Devoy realized that there was a young child in the room and removed Dhaenens from the room. By this time, a Greenfield Police Department officer arrived and watched Dhaenens while Deputy Devoy went back inside the room to attend to a visibly upset Megan and her son.

Dhaenens was taken to the hospital for his injuries. Photographs were taken on the scene of Megan's injuries. *See* State's Ex. 3 & 4. One of the photographs depicts a bruise to Megan's arm, and the other photograph shows Megan's clothed body with no

clearly visible injuries.[1]  In addition to the bruise to her arm, Megan said that she had bruising to her neck and hip.  Tr. p. 58.

The State charged Dhaenens with Class A misdemeanor domestic battery, Class D felony domestic battery (elevated from a Class A misdemeanor for committing the offense in the physical presence of a child less than sixteen years old), two counts of Class C felony criminal confinement (one for Megan and the other for J.I.), and Class A misdemeanor interference with reporting of a crime.  A bench trial was held, and J.I., Megan, and Dhaenens all testified.  The trial court found Dhaenens guilty of Class D felony domestic battery and one count of Class C felony criminal confinement (Megan).  The court sentenced Dhaenens to concurrent terms of eighteen months in the Department of Correction for domestic battery and forty-eight months in the DOC for criminal confinement with thirty months suspended to probation.

Dhaenens now appeals.

### Discussion and Decision

Dhaenens raises two issues on appeal.  First, he contends that his convictions for Class D felony domestic battery and Class C felony criminal confinement violate Indiana double-jeopardy principles because "the same injury forms the basis for each conviction." Appellant's Br. p. 4.  Dhaenens also contends that the evidence is insufficient to support

---

[1] *See* Tr. p. 145 (defense counsel stating during closing arguments that he could not see any injuries from the photographs other than the bruise to Megan's arm).

his domestic-battery conviction because the evidence does not show that he is or was living as Megan's spouse.[2]

## I. Double Jeopardy

Dhaenens first contends that his convictions for Class D felony domestic battery and Class C felony criminal confinement violate Indiana double-jeopardy principles because they are based on the same injury. Whether convictions violate double jeopardy is a question of law that we review de novo. *Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002).

Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Two or more offenses are the "same offense" under Article 1, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008). Dhaenens contends that his two convictions fail the actual-evidence test. We disagree.

Under the actual-evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 1234. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged

---

[2] Dhaenens also contends that the evidence is insufficient to support his criminal-confinement conviction, but he presents no argument to support this contention.

offense. *Id.* Application of this test requires the court to identify the essential elements of each of the challenged crimes and evaluate the evidence from the fact-finder's perspective. *Id.* In addition, Indiana law recognizes that where one conviction is elevated based on the same bodily injury that forms the basis of another conviction, the two cannot stand. *Strong v. State*, 870 N.E.2d 442, 443 (Ind. 2007). To remedy this type of double-jeopardy violation, a court may reduce the sentencing classification on one of the offending convictions. *Id.*

Here, the charging informations for both Class D felony domestic battery and Class C felony criminal confinement allege bodily injury to Megan. *See* Appellant's App. p. 88 (domestic-battery charge alleging "bodily injury" to Megan), 82 (criminal-confinement charge alleging that Dhaenens knowingly confined Megan without her consent and such confinement resulted in "bodily injury to [Megan], to wit: bruising and pain to the torso and neck areas"). Bodily injury is an element of both Class D felony and Class A misdemeanor domestic battery. *See* Ind. Code § 35-42-2-1.3. In contrast, bodily injury enhances criminal confinement from a Class D felony to a Class C felony. *See* Ind. Code § 35-42-3-3.

As for the bodily injury element of Class D felony domestic battery, the State argued during closing arguments, "We have the photographs to prove the injuries that resulted from that battering." Tr. p. 142-43. As noted above, the photographs show a bruise to Megan's arm. As for the bodily injury element of Class C felony criminal confinement, the State argued that the confinement occurred when Dhaenens locked the door and Megan twice tried to get up and open the door to leave but was prevented from

7

doing so. *Id.* at 143. The State directed the trial court "to the bruising and the pain around [Megan's] torso and her neck areas that she described in her testimony as well as the photographs admitted." *Id.*

The State argues on appeal that there is no violation of the actual-evidence test because the trial court "could have reasonably found that [Dhaenens] committed domestic battery as a Class D felony" by "punching Megan in the face and the injuries to her arm, neither of which formed the basis for the criminal confinement conviction." Appellee's Br. p. 12. We agree. That is, the State explicitly used the bruising to Megan's hip and neck to support the bodily injury element of criminal confinement. But Megan had one more injury: a bruise to her arm. In addition, Megan testified that Dhaenens, who was sitting on top of her, hit her in the face with his fist. According to Indiana Code section 35-41-1-4,[3] "bodily injury" is defined as "any impairment of physical condition, including physical pain." The pain does not have to be of any particular severity or endure for any particular length of time. *Toney v. State*, 961 N.E.2d 57, 59 (Ind. Ct. App. 2012). Although Megan did not testify that Dhaenens's punch caused her pain, the mere fact that he hit her in the face with his fist is sufficient to establish bodily injury. *See Lewis v. State*, 898 N.E.2d 429, 435 (Ind. Ct. App. 2008) ("Although [the victim] may have gamely attempted to minimize the physical pain he felt by stating that his adrenaline was running, the jury was free to infer from [the victim's] comments that he was hit 'pretty hard' and that 'it didn't feel good' that he indeed felt physical pain, thus experiencing bodily injury."), *trans. denied*. Because of Megan's separate injuries and

---

[3] Effective July 1, 2012, this section will be recodified at Indiana Code section 35-31.5-2-29. *See* P.L. 114-2012.

the fact that this case was tried before a judge, who is presumed to know the law and apply it correctly, we conclude that Dhaenens's convictions do not violate the actual-evidence test. *See H.M. v. State*, 892 N.E.2d 679, 682-83 (Ind. Ct. App. 2008) (noting that we presume the trial court knows the law and applies it correctly, including parsing the evidence to avoid violation of the actual-evidence test), *trans. denied*.

## II. Sufficiency of the Evidence

Finally, Dhaenens contends that the evidence is insufficient to support his conviction for Class D felony domestic battery because the evidence does not show that he is or was living as Megan's spouse. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* When confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quotation omitted). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.*

Dhaenens challenges only one element of his Class D felony domestic-battery conviction. That is, he argues that the evidence does not prove that he "is or was living as if a spouse of the other person as provided in subsection (c)." Ind. Code § 35-42-2-

9

1.3(a)(2). Subsection (c), in turn, provides that in considering whether a person is or was living as a spouse of another individual in subsection (a)(2), the court shall review:

> (1) the duration of the relationship;
> (2) the frequency of contact;
> (3) the financial interdependence;
> (4) whether the two (2) individuals are raising children together;
> (5) whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
> (6) other factors the court considers relevant.

Ind. Code § 35-42-2-1.3(c). The legislature did not intend for these factors to serve as a litmus test, and this Court has previously determined that the list does not need to be consulted "if the character of the relationship is clearly 'domestic.'" *Croy v. State*, 953 N.E.2d 660, 663 (Ind. Ct. App. 2011) (quotation omitted), *reh'g denied*.

The record shows that Dhaenens and Megan lived together off-and-on for approximately one year, during which time they dated. Even though Dhaenens kicked Megan out on July 1, her belongings were still at his house on July 6. In fact, the argument began on the morning of July 6 because Megan had a new boyfriend and Dhaenens did not want their relationship to be over. Although Dhaenans and Megan were not raising children together, the record shows that Dhaenens was nevertheless worried about J.I. after he kicked Megan out and even took care of J.I. for a short time during another time that Megan moved out. *See* Tr. p. 114 ("And honestly I didn't feel comfortable just having her and [J.I.] out on the street so I wanted to offer my assistance helping her with [J.I.], maybe figuring out a situation where we could be roommates."), 135 (Dhaenens indicating that one other time Megan moved out, he took care of J.I.).

Although the State did not elicit substantial evidence on all of the factors listed in subsection (c), the evidence nevertheless establishes that Dhaenens and Megan lived together for about a year during which time they dated. And even though Dhaenens and Megan were not living together on July 6, Megan had just moved out a few days before, her belongings were still at Dhaenens's house, and Dhaenens was upset that Megan had a new boyfriend. In addition, Dhaenens felt a responsibility toward Megan's young son, J.I. Based on this evidence, the State has proved that Dhaenens was living as if Megan's spouse. *See Williams v. State*, 798 N.E.2d 457, 461 (Ind. Ct. App. 2003) ("Further, when the character of the relationship clearly warrants application of the domestic battery statute, i.e., the couple is cohabiting and engaged in an ongoing romantic relationship, a court would not need to undertake further analysis. In marginal cases, such as *Vaughn* [*v. State*, 782 N.E.2d 417 (Ind. Ct. App. 2003), *trans. denied*], where the character of the relationship is uncertain, the factors should be applied, but, on the facts of this case, we need not ask the State to prove more than it has."). The evidence is sufficient to support Dhaenens's conviction for Class D felony domestic battery.

Affirmed.

CRONE, J., and BRADFORD, J., concur.